**Robert E. HANSON, Appellant,**

v.

**HUNT OIL COMPANY, a Foreign Corporation, Appellee.**

No. 18998.

United States Court of Appeals Eighth Circuit.

Aug. 7, 1968.

Morris Chertkov, Washington, D. C., for appellant; Worth Rowley, Washington, D. C., and E. F. Engebretson (of Pearce, Engebretson, Anderson & Schmidt), Bismarck, N. D., on the brief.

Russell R. Mather (of Fleck, Smith, Mather, Strutz & Mayer), Bismarck, N. D., for appellee; Ernest R. Fleck of the same firm, Bismarck, N. D., on the brief.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN OOSTERHOUT, Chief Judge.

Plaintiff Hanson has taken this timely appeal from final judgment of the District Court dismissing his complaint and awarding defendant, Hunt Oil Company (Hunt), judgment for $79,577.35 on its counterclaim. Jurisdiction exists by reason of diversity of citizenship and the requisite amount.

A rather extensive statement of background facts is essential to present the issues in proper perspective. Hanson shared with William Walters a working interest in three producing oil wells in North Dakota, which normally yielded 84–84–54 barrels per day. Hunt, which owned a substantial working interest in the area, was vigorously pushing a unitization project known as the Tioga-Madison Unit. It was necessary to obtain the participation of 95% of the owners of working interest in the field to create the unitization and plaintiff's participation was necessary to reach such percentage. Hunt persistently sought plaintiff's participation. Plaintiff repeatedly refused to participate, stating as grounds therefor (1) he did not believe the predicted yields under the unitized unit would produce as much income for him as his existing operation and he needed the income because of heavy mortgage obligations, (2) he did not have funds to pay the cost of joining the unit, and (3) he did not believe the participation allotted to him in the unit

was sufficiently high as his wells were among the best producers in the entire field.

Hanson was ultimately persuaded by Hunt's representative to sign the unit agreement on the basis of a letter agreement prepared by Hunt's counsel and signed by Latimer, an authorized representative, with written acceptance endorsed thereon by Hanson. The letter agreement provides that Hunt will make certain advances required of Hanson by the unit agreement. Then follows the portion here in controversy, reading:

"4. All sums so advanced for your account, plus interest thereon at six per cent (6%) per annum, shall be repaid by you to Hunt Oil Company from and out of the following:

"A. From month to month out of production or proceeds therefrom with respect to certain wells, as follows:

All production of Unitized Substances from the North Tioga-Madison Unit accruing to your account that is in excess of your normal share of total oil production from Investors-State Nos. 1 and 2 Wells and from the Hunt-Johnson State No. 1 Well. For purposes hereof, 'normal share of total oil production' from Investor-State Nos. 1 and 2 Wells means your share of total oil production from said wells under production allowables (up to a maximum of 84 barrels per day per well) which would be assigned to said wells if they had not been included in the Unit. 'Normal share of total oil production' for the Hunt-Johnson State No. 1 Well shall be your share of total oil production from that well up to a maximum of 54 barrels per day total oil production from the well.

"B. All your share of income from said gasoline plant, including income from sales of extracted liquids and other plant products, and sales of gas and residue gas."

Plaintiff's basic contention in this litigation, asserted in paragraph VI of his amended complaint filed May 31, 1966, is:

"That in entering said agreement of August 24, 1961, it was the intent of the parties that the plaintiff was not obligated to repay any part of such advance until the defendant had paid plaintiff for 84 barrels of oil per day in connection with wells F22 and F24, and had paid plaintiff for 54 barrels of oil per day in connection with well D28, after which time plaintiff's share of production over such stated amounts was to be applied against the money so advanced by defendant to plaintiff. * * *"

Plaintiff in his prayer among other things prayed:

"(2) That if the Court finds that the agreement of August 24, 1961 is ambiguous that the Court reform said agreement to conform with the intentions of the parties as set forth in this complaint."

Additionally, Hanson asked that defendant be required to account to him for all sums applied to advances made in violation of the agreement as pleaded.

The trial court by letter opinion filed August 29, 1966, determined the letter agreement was not ambiguous and that hence the intention of the parties must be gathered solely from the language used in the letter agreement and that parol evidence would not be admissible.

The case was set for and reached for trial on September 12, 1966. At the opening of the trial, plaintiff tendered an amendment to the complaint which amended the prayer for reformation to read:

"(2) That if the Court finds that the agreement of August 24, 1961, does not conform with the intentions of the parties at the time of making the agreement, that there be held to be a mutual mistake in reducing said agreement to writing, and that the Court reform said agreement to con-

form with the intention of the parties as set forth in this complaint."

Plaintiff's counsel, in seeking leave to amend, stated: "[W]hile we pled for reformation in the original Complaint and in the Amended Complaint perhaps the language wasn't quite as good as it should have been, and we have introduced a little clarifying language in the reformation portion of it."

Defendant objected to the amendment on the ground that it asserted a new cause of action. The court sustained defendant's objection and would not permit the amendment. Plaintiff's offer and tender of oral evidence in proof of his reformation claim was rejected. Subsequently final judgment was entered dismissing plaintiff's claim and awarding judgment on defendant's counterclaim. The judgment is based on the court's interpretation of the letter agreement as written.

Plaintiff urges that the court erred in denying him the right to offer evidence in support of his claim for reformation upon the ground of mutual mistake. His position is that he adequately pleaded reformation in the complaint filed on May 31, 1966, and that if such not be the situation, the court in any event erred in refusing to receive the tendered amendment. We agree with both of such contentions.

■■ While the amended complaint filed May 31, 1966, could have stated the claim for reformation more clearly than it did, a prayer for reformation was made. Paragraph VI of the complaint, hereinabove quoted, sets forth the claimed mutual intent of the parties. We believe that such pleading gives the defendant fair notice that plaintiff is seeking reformation based upon mutual mistake. Additional information, if desired, was available by means of pretrial and discovery procedure. All that is required by Rule 8, Fed.R.Civ.P., by way of pleading a claim is "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 is

to be liberally construed. A pleading which gives defendant fair notice of what plaintiff's claim is and the grounds upon which it rests complies with the rule. Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80; Schaedler v. Reading Eagle Publication, Inc., 3 Cir., 370 F.2d 795, 798; See 2A Moore's Federal Practice ¶ 8.13.

■ In any event, the amendment tendered on the day of trial clears up any existing deficiency in the pleading of reformation. While defendant objected to the reception of the amendment, it made no showing of surprise or prejudice. It was established that the parties who had acted for Hunt in the transaction were in the courtroom. The provisions of Rule 15, Fed.R.Civ.P., are to be liberally construed. The Supreme Court in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 holds:

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948) ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

■ Ordinarily, delay alone is an insufficient basis for denying leave to amend. Prejudice must be shown. 3 Moore Federal Practice ¶ 15.08(4). Additional support for allowing the amendment may be found in the last two sentences of Rule 15(b).

In our present case, the trial court sets forth no valid basis for the denial of leave to file the amendment. Under the holding of Foman v. Davis, supra, the refusal to grant leave to amend on the record here presented amounts to an abuse of discretion.

■ It is generally recognized that parol evidence is admissible to support a claim for reformation. Oliver-Mercer Elec. Coop., Inc. v. Fisher, N.D., 146 N.W.2d 346, 355; Cokins v. Frandsen, N.D., 141 N.W.2d 796, 800; see 76 C.J. S. Reformation of Instruments § 83b. It is our view that the court erred in refusing to receive parol evidence on the reformation issue.

We do not reach the issue presented of whether the court erred in determining the letter agreement was unambiguous, nor do we pass upon the correctness of the trial court's interpretation of the contract as written. Such issues would not be material if plaintiff prevails on his reformation claim. While some offers of proof were made in connection with the reformation issue, we hold that the plaintiff is entitled to an evidentiary hearing upon such issue and express no view on whether the evidence which may ultimately be introduced will support plaintiff's right to reformation. We merely hold that plaintiff is entitled to make his record upon such issue.

The judgment entered must be vacated by reason of the court's failure to permit the amendment tendered and its refusal to receive parol evidence in support of the reformation issue.

The judgment is reversed and this case is remanded to the trial court for further proceedings not inconsistent with views herein expressed.