**UNITED STATES of America,
Plaintiff,**

**v.**

**INTERNATIONAL BUSINESS MA-
CHINES CORPORATION,
Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York.

Jan. 7, 1975.

Raymond M. Carlson, Dept. of Justice, Washington, D. C., for plaintiff.

Thomas D. Barr, Cravath, Swaine & Moore, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

The plaintiff United States has moved for leave to amend its complaint, filed January 17, 1969, in this civil antitrust action. The gravamen of the original complaint is that defendant International Business Machines Corporation ("IBM") "has attempted to monopolize and has monopolized . . . interstate trade and commerce in general purpose digital computers in violation of Section 2 of the Sherman Act (15 U.S.C. § 2)." The complaint alleges that the charged offenses "are continuing and will continue unless the relief hereinafter prayed for is granted."

Paragraph 20 of the original complaint alleges that "pursuant to and in furtherance of the aforesaid attempt to monopolize and the monopolization," the defendant "has done, among other acts, the following:

(a) Maintained a pricing policy whereby it quotes a single price for hardware, software and related support and, thereunder, (i) discriminated among customers by providing certain customers with extensive software and related support in a manner that unreasonably inhibited the entry or growth of competitors; and (ii) limited the development and scope of activities of an independent software and computer support industry as a result of which the ability of its competitors to compete effectively was unreasonably impaired;

(b) Used its accumulated software and related support to preclude its competitors from effectively competing for various. customer accounts;

(c) Restrained and attempted to restrain competitors from entering or remaining in the general purpose digital computer market by introducing selected computers, with unusually low profit expectations, in those segments of the market where competitors had or appeared likely to have unusual competitive success, and by announcing future production of new models for such markets when it knew that it was unlikely to be able to complete production within the announced time; and

(d) Dominated the educational market for general purpose digital computers, which was of unusual importance to the growth of competitors, both by reason of this market's substantiality and by reason of its ultimate impact on the purchasing decisions in the commercial market, by granting exceptional discriminatory allowances in favor of universities and other educational institutions."

Plaintiff seeks to change the first line of Paragraph 20(a) to read, "Main-

tained pricing policies, including the quoting of." Additionally, to the above list of acts, it seeks to add the following:

(e) Attempted to monopolize and has monopolized interstate trade and commerce in tape drives and their associated controllers, disk drives and their associated controllers, and add-on memory devices, for attachment to IBM's general purpose electronic digital computer systems for the purpose or with the effect of restraining or attempting to restrain its competitors from entering, remaining or expanding in the market for general purpose electronic digital computer systems or in the submarkets for said peripherals or any of them;

(f) Engaged in various pricing and marketing practices with regard to its peripheral equipment for the purpose or with the effect of restraining or attempting to restrain its competitors from entering, remaining or expanding in the market for general purpose electronic digital computer systems or in the submarkets for said peripherals equipment or any of them; and

(g) Maintained pricing and marketing policies which had the purpose or the effect of creating or maintaining a lease-oriented environment so as to raise the barriers to entry or expansion in the market for general purpose electronic digital computer systems and submarkets thereof, or any of them.

The Government also asks leave to make a number of additional changes; defendant does not contest this motion as it relates to those additional changes, calling them "meaningless or inconsequential." Accordingly, it is unnecessary for the court to enumerate or consider those amendments.

Plaintiff asserts that the basis for the proposed amendment of its complaint is (1) to make explicit in the complaint allegations which have been made in other documents filed with the court as the result of pretrial conferences convened to delineate the issues; (2) to correct an allegation of the defendant's ownership interest which changed after the filing of the complaint; (3) to allege that the offenses originally charged as having continued up to the filing of the complaint have continued up through the amending of the complaint and (4) to clarify the words "general purpose digital computer."

Plaintiff's Notice of Motion to Amend the Complaint, filed November 1, 1974, at 5.

The Government advances two basic arguments in support of its motion. It first argues that the granting of the motion cannot result in any prejudice to IBM because IBM has known about the issues involved for many months, has conducted extensive discovery on them, and may be allowed further discovery by appropriate court order upon a showing that new issues warranting further discovery are raised. Secondly, the Government argues that the issues involved are the "natural outgrowth" of its discovery in this case, discovery which has been directed toward the four specified items of anticompetitive behavior and toward the "other acts" by which the defendant has allegedly committed a continuing violation of the Sherman Act. The Government asserts that the discovery and pleading of these acts is what the court should expect of counsel in light of counsel's duty to bring to the attention of the court matters relevant to its allegation of a continuing violation.

In opposition to the motion, defendant argues initially the plaintiff's proposed pleading is properly a supplemental rather than an amended complaint and should be treated as such. Defendant

further argues that the court, in the exercise of its discretion, should deny the motion for a number of reasons. First, it is asserted, granting of the motion will necessitate extensive discovery and will both delay the imminent commencement of the trial of this case and extend the time necessary for its presentation and resolution. Secondly, denying the motion will not prejudice the plaintiff because it will "retain the right to commence a separate action" involving the matters in the proposed pleading. Third, argues the defendant, the plaintiff has offered no justification for the necessity of including these issues, which allegedly are being litigated in other pending federal court actions, in this suit.

Plaintiff's motion is made in the context of the parties' inability to agree to a joint statement of issues to be tried in this litigation. Therefore, it is useful to describe briefly the background of the issue formulation.

The first attempts to define the issues were made in March, 1972, when defendant filed its "First Preliminary Draft of Statement of Issues" (March 14) and plaintiff filed its "Tentative Statement of Issues on Market Definition" (March 20). Plaintiff made further filings on September 12, 1972, and October 13, 1972. In its October 13 statement the plaintiff included issues related to peripheral equipment and the leasing practices of the defendant. IBM responded on October 30 with "Defendant's Draft Response to Plaintiff's Preliminary Statement of Tentative Triable Issues" and said that the leasing and peripheral equipment issues were not a part of this case. That dispute has continued through the numerous additional attempts to formulate the issues. The instant motion was made to "precipitate the question of which issues are in and which issues are not in the case." Affidavit in Support of Motion to Amend of Raymond M. Carlson, October 29, 1974, at 7.

The court is of the opinion that no formal addition to the complaint is necessary in light of the allegation of a continuing violation, and that, therefore, the motion to amend is not an essential prerequisite to the litigation of the issues contained in the proposed new pleading. The parties, however, for purposes of clarity, have chosen to present the question of whether these issues are "in the case" through the vehicle of a motion to amend the complaint. Having been formally presented with the dispute in this manner, the court will consider it in the context of Fed.R.Civ. P. 15, which governs amendment of pleadings.

■■■■ IBM argues that plaintiff's proposed new pleading is properly a supplemental complaint rather than an amendment to the original complaint because it avers acts occurring after the date of the complaint.[1] Fed.R.Civ.P.

---

1. Defendant asserts that an improper denomination of this pleading as an amendment will prejudice its rights in other lawsuits. This argument is based on the fact that under Fed. R.Civ.P. 15(c) amended pleadings relate back to the date of the original pleading; no such explicit provision is made for supplemental pleadings. The date at which the new claims are deemed to have been asserted is important to the defendant because pursuant to 15 U.S.C. § 16(b) the statute of limitations for private rights of action based on matters complained of here is suspended during the pendency of this action.

Whether the proposed pleading should be called a supplement or an amendment is of no consequence to the disposition of the instant motion. Irrespective of the designation, the court may treat the pleading as a supplemental complaint if that is appropriate. Amar v. Garnier Enterprises, Inc., 41 F.R.D. 211 (C.D.Cal.1966); United States v. Reiten, 313 F.2d 673 (9th Cir. 1963). In the case of a supplemental complaint, as with an amended complaint, the decision as to whether leave to file should be granted is entrusted to the exercise of the court's discretion. Minnesota Mining and Manufacturing Co. v. Superior Insulating Tape Co., 284 F.2d 478 (8th Cir. 1960); Rowe v. United States Fidelity and Guaranty Co., 421 F.2d 937 (4th Cir. 1970). Thus the court would apply the same stand-

15(d) provides for service of a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be amended." Amended pleadings, which are governed by Fed.R.Civ.P. 15(a), set forth matters occurring prior to the date of the original pleading but omitted from that pleading. In this action the original complaint alleges a continuing violation; some of the matters which the plaintiff seeks to add relate to occurrences which took place after the filing of the complaint but which allegedly constitute part of the continuing violation. Essentially, plaintiff seeks to amend its complaint to assert, *inter alia,* that transactions, occurrences, or events which were happening prior to the date of the complaint continued to happen in the post-complaint period, *i. e.,* that in the post-complaint period the defendant continued to commit acts which constitute an illegal monopolization. Under these circumstances, where the contents of the proposed pleadings are continuations of those things originally alleged, the court believes that an amended, rather than a supplemental, complaint is proper.

■ Fed.R.Civ.P. 15(a) provides, in pertinent part, that "a party may amend his pleading only by leave of court . . . ; and leave shall be freely given when justice so requires." The applicable standard for determining whether to grant leave for the filing of an amended complaint has been stated by the Supreme Court. "The applicable rule is Rule 15 of the Federal Rules of Civil Procedure, which was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960). The court elaborated on this standard in Foman v.

Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L. Ed.2d 222 (1962).

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." 371 U.S. at 182, 83 S.Ct. at 230.

Defendant's opposition to this motion focuses on three of the criteria set forth in *Foman*—undue delay, bad faith and dilatory motive, and undue prejudice. Therefore, the court's analysis will be confined to these areas.

■ Numerous courts have held that the moving party's delay in seeking to amend a pleading is not, in and of itself, sufficient reason to deny the motion. "Delay, inexcusable or excusable, is not alone sufficient to warrant denial of leave to amend." Fli-Fab, Inc. v. United States, 16 F.R.D. 553, 556 (D.R.I.1954); *accord,* Hanson v. Hunt Oil Co., 398 F.2d 578 (8th Cir. 1968); A. L. B. Theatre Corp. v. Loew's Inc., 21 F.R.D. 584 (N. D.Ill.1957). On finding an abuse of discretion in the trial court's refusal to allow an amendment, the Ninth Circuit, per Judge Lumbard, sitting by designation, said:

While it is true that the motion was made five years after the third party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend. Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion. . . . Only where preju-

ard to a proposed amendment as to a proposed supplement. Moreover, no issue of relation back, whose disposition might depend

on the characterization of the new pleading, is involved in the instant motion.

dice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading. . . . [T]he mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend.

Howey v. United States, 481 F.2d 1187, 1190–1191 (9th Cir. 1973). The Second Circuit rule on the importance of delay as a factor in assessing a motion to amend is clear:

The three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend. It may be a factor to be considered but unless the motion either was made in bad faith or will prejudice defendant, delay by itself, is not enough to deny the requisite relief. Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968).

In support of its argument that the combination of delay in proposing the amendment and a resulting delay in trial of the case is a sufficient predicate for denial of leave to amend, IBM cites Beloit Corp. v. Kusters, 13 F.R.Serv.2d 174 (S.D.N.Y.1969) and Dale Hilton, Inc. v. Triangle Publications, Inc., 5 F.R.Serv. 2d 185 (S.D.N.Y.1961). Both cases are distinguishable. In *Beloit* the trial judge found bad faith in the delay, saying that a proposed antitrust claim was "only a last-minute tactic of counsel to delay trial of the patent issues." 13 F. R.Serv.2d at 176. In the *Hilton* case, delay caused by the amendment would have been extended because of the court's own scheduling problems and the pendency of other matters. Thus the case would have been delayed beyond the time necessary to prepare for trial. No such complicating factor exists in the case at hand.

This court will adhere to the clear rule that delay is an insufficient basis for denial of leave to amend.

Therefore, the fact that plaintiff's motion was made more than five years after the commencement of this action is, in itself, inconsequential.

The timing of the motion, however, may be important as it relates to defendant's charge of dilatory motive and its questioning of plaintiff's good faith. In support of these assertions, IBM cites "plaintiff's prior conduct, the timing of its motion, and the nature of the new pleadings." It is not clear what is meant by "plaintiff's prior conduct." Plaintiff has not made any previous motions to amend the complaint; nor is there any showing that the Government has in any way abused the process of the court. In contrast, see Klein v. Spear, Leeds and Kellogg, 309 F.Supp. 341, 344 (S.D.N.Y.1970), in which the court denied the plaintiff, "whose seemingly endless of [sic] stream of unsuccessful litigation has grossly abused the processes of courts in the past, leave to amend the instant complaint yet another time to assert a claim having only pendent jurisdiction and apparently barred by res adjudicata."

IBM does not make any showing sufficient to justify its conclusion that the timing of this motion leads to an inference of bad faith and dilatory motive. It should be noted that this cannot fairly be characterized as a situation in which the plaintiff on the eve of trial seeks to add new claims so as to surprise the defendant and/or delay the trial for no justifiable reason. The issues raised here were raised by the plaintiff in its statements of triable issues long before its motion to amend was made. With respect to these issues IBM cannot legitimately complain of unfair surprise. Moreover, throughout the course of pretrial proceedings in this case, plaintiff has acted in the belief that these issues were within the original complaint. See Transcript of November 21, 1974, at 4–8. The motion to amend is seen by both parties as a procedural formality for presenting the issues dispute to the

court (see Transcript of October 16, 1974, at 70–72); the motion was made late in the day because of the long-term efforts of IBM and the Government to resolve the question without court intervention. These circumstances further undercut the defendant's charge that the motion to amend was made in bad faith and with dilatory motive.

■ As a final argument in support of its charge of lack of good faith, IBM points to the "nature of the new pleadings," arguing that the new paragraphs are "obtuse and uninformative." The court finds that the new paragraphs comply with modern notions of notice pleading; additionally, plaintiff's statements of triable issues, submitted throughout the course of this litigation, serve, as they should, to define further and make specific the allegations of the complaint.

■ The critical element in determining whether to grant leave to file an amended complaint is prejudice to the opposing party. Kerrigan's Estate v. Seagram & Sons, Inc., 199 F.2d 694 (3rd Cir. 1952); Heay v. Phillips, 201 F.2d 220 (9th Cir. 1952); Sunray Oil Corp. v. Sharpe, 209 F.2d 937 (5th Cir. 1954); Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380 (2d Cir. 1968), Hanson v. Hunt Oil Co., 398 F.2d 578 (8th Cir. 1968); Howey v. United States, 481 F.2d 1187 (9th Cir. 1973); Hageman v. Signal L. P. Gas, Inc., 486 F.2d 479 (6th Cir. 1973). The prejudice asserted by IBM is prejudice to its "preparation for a prompt trial." Defendant argues that the granting of the motion will necessitate additional discovery and so will delay the commencement of trial; additionally, defendant asserts that the inclusion of the matters contained in the new pleading will make both the trial and the decision of this case longer and more complex.

Those courts which have denied leave to amend on the ground of prejudice to the opposing party have focused their analysis on prejudice to that party's ability to litigate the merits of its case. Thus, it has been held to constitute error to allow amendment of an answer to plead the statute of limitations when, had that defense been pleaded earlier, the plaintiff could have instituted suit in another jurisdiction in which its claim would not be time barred. Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir. 1960); Strauss v. Douglas Aircraft Co., 404 F.2d 1152 (2d Cir. 1968). Similarly, leave to amend an answer to defeat diversity jurisdiction was denied when the motion was made four days before the running of the statute of limitations and the defendant's original admission of jurisdiction had lulled the plaintiff into the belief that diversity was not in dispute. Klee v. Pittsburgh & West Virginia Railway Co., 22 F.R.D. 252 (W.D.Pa.1958). In both of these situations, the practical effect of allowing the amendment was to deprive the plaintiff of an opportunity to litigate its claim. In light of such clear prejudice to the opposing party's case, denial of leave to amend was appropriate.

Prejudice has also been found when the effect of the amendment is to impair the opposing party's ability to present evidence. "Evidence which might have been readily available to plaintiff two years ago has now become unavailable, as records have been destroyed and the memory of witnesses has dimmed. Plaintiff has been lulled into believing that he would not have to produce independent evidence of who loaded the tractor-trailer [a fact admitted in the original answer but which defendant sought to contest by its proposed amendment]. If we allowed the amendment now, plaintiff's case would be seriously prejudiced." Bratt v. Bethlehem Steel Co., 30 F.R.D. 365 (E.D.Pa.1962). See also Boris v. Moore, 253 F.2d 523 (7th Cir. 1958) in which leave to amend a complaint was denied when the motion to amend was made eight months after the last answer was filed and a material

witness whom the defendant had not deposed as to matters contained in the amendment had died in the interim.

■ Defendant does not argue that its ability to present its case will be prejudiced if this motion is granted. The prejudice it asserts is based on a potential delay in the resolution of the charges made against it. While the court agrees that IBM has an interest in the prompt resolution of this lawsuit, that interest does not give rise to the type of prejudice which is the basis for denying leave to amend. As one court said, "While it is true that the allowance of the proposed amendment will present a question which may require additional preparation for trial by both the plaintiff and defendants, this is clearly no ground for denial of the motion of the defendants." Fli-Fab, Inc. v. United States, 16 F.R.D. 553 (D.R.I.1954). Similarly, any potential extension of trial time necessitated by amendment does not rise to the level of legal prejudice. Under modern federal practice, as a general rule, the entire controversy between two parties should be litigated as a unit. That doing so will make a case longer or more complex is not a sufficient reason to exclude certain issues from a case.

■ IBM has advanced one additional argument in opposition to the Government's motion. It argues that denial of the motion will not prejudice the plaintiff because it will retain the right to commence a separate action involving the issues contained in the proposed new pleading, and that, in any event, the issues involved here are currently being litigated before other courts by private plaintiffs. The court is unpersuaded by this argument. Lack of prejudice to the moving party is not a recognized ground for denial of leave to amend. Moreover, as stated above, the concept of fragmenting a controversy is inconsistent with the philosophy of the Federal Rules of Civil Procedure. In allowing a plaintiff to add new claims to its complaint, one court noted that "if plaintiff's motion were denied here a separate action against the defendant could be instituted, and . . . it is clearly preferable to dispose of all the contentions between these parties in one proceeding." Jenn-Air Products Co., Inc. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D.Pa.1968). If an amended complaint is proper within the guidelines set forth above, the issues it presents should become part of the case regardless of other pending proceedings or the possibility of a new action.

■ Plaintiff is granted leave to file its proposed amended complaint. As the court has previously advised the parties, it is prepared, at the earliest possible time, to consider the question of what further discovery by IBM may be warranted as a result of this opinion.

So ordered.