SELECT CREATIONS, INC., a Wisconsin
corporation, Plaintiff,

v.

PALIAFITO AMERICA, INC., an Illinois
corporation, Defendant/Third Party
Plaintiff,

v.

Miryoung (a/k/a "Joy") Lee; Jerrold Lee;
Mantae Company, Limited; Sam Petro-
vich; Thomas Meisenheimer and Select
Creations, Inc., Third Party Defendants.

PALIAFITO AMERICA, INC., an Illinois
corporation, Defendant/Counterplaintiff,

v.

DAYTON HUDSON CORPORATION, a
Minnesota corporation doing business
as Target Stores, a division of Dayton
Hudson Corporation, Defendant.

Nos. 91–C–1240, 92–C–214.

United States District Court,
E.D. Wisconsin.

June 25, 1993.

Robert H. Storm, Canellos & Storm, Wauwatosa, WI, for Select Creations, Inc., Samuel Petrovich and Thomas Meisenheimer.

Harold A. Laufer, Davis & Kuelthau, Milwaukee, WI, David E. Springer, John K. Lyons Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Paliafito America, Inc.

David F. Loeffler, Krukowski & Costello, Milwaukee, WI, for Joy and Jerrold Lee.

Scott W. Hansen, Patrick Hodan, Reinhardt, Boerner, Van Druren, Norris & Rieselbach, Milwaukee, WI, for MCL.

Thomas G.A. Herz, Grant Killoran, Michael, Best & Friedrich, Milwaukee, WI, for Target/Dayton–Hudson.

Arnold M. Quittner, Alison Zirn, Stroock & Stroock & Lavan, Los Angeles, CA, for MAI.

Stephen P. Juech, Mary Flanner–Strack, Frisch Dudek, Ltd., Milwaukee, WI, for Keith D. Nowak, Lieberman, Rudolph & Nowak.

## DECISION AND ORDER

WARREN, Senior District Judge.

Now before the Court is the motion of defendant-counterplaintiff Paliafito[1] pursuant to Rule 15(a), Fed.R.Civ.P., for an order granting leave to file its "Second Amended Counterclaim and Third–Party Complaint." For the following reasons, Paliafito's motion will be granted.

## I. BACKGROUND

The facts underlying this dispute are (already) complex. (*See* Order of December 1, 1992, 828 F.Supp. 1301, 1305–54.) For purposes of the motion now before the Court, however, only the following procedural history, as set out in greater detail in the Civil Docket, is relevant.

On December 2, 1991, Paliafito filed a counterclaim and third-party complaint against Select in this case, Case No. 91–C–1240. Thereafter, on December 11, 1991, Paliafito filed a first amended counterclaim and third-party complaint, and moved for a writ of attachment and preliminary injunction.

On February 21, 1992, Paliafito commenced an action against Target in Case No. 92–C–214. Target then filed a third-party complaint therein against MAI on March 24,

1992. Six (6) days later, on March 30, 1992, Paliafito moved to consolidate this case with the first.

A six-day hearing on the motion for a writ of attachment and preliminary injunction commenced on April 6, 1992. Thereafter, on April 17, 1992, Paliafito moved for leave to file its second amended counterclaim and third-party complaint in the first case, *i.e.*, the motion now before the Court.

On December 1, 1992, the Court granted in part and denied in part Paliafito's motion for a writ of attachment and a preliminary injunction.

Thereafter, on February 8, 1993, the Court ordered the consolidation of Case No. 92–C–214 with Case No. 91–C–1240.

On February 19, 1993, the Court granted Paliafito's motion for a writ of attachment, preliminary injunction, and appointment of receiver, and on April 7, 1993, Paliafito's motion for a first supplemental writ of attachment, preliminary injunction, and appointment of receiver.

At a discovery schedule hearing before the Court on April 27, 1993, the Court ordered, *inter alia*, that all proceedings be stayed for sixty (60) days pursuant to MAI's bankruptcy filing in the Central District of California.

Another discovery schedule hearing is scheduled for June 25, 1993. Paliafito's motion, therefore, is now before the Court for resolution.

## II. DISCUSSION

### A. *Legal Framework of Rule 15(a)*

■ Rule 15(a), Federal Rules of Civil Procedure ("Rule 15(a)"), reads, in relevant part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[2]

---

1. Except as otherwise stated, the Court herein adopts those abbreviations of parties' names employed in its orders of December 1, 1992, December 21, 1992, February 8, 1993, February 19, 1993, March 4, 1993, and March 7, 1993.

2. Rule 15(a) reads, in its entirety, as follows:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may

Fed.R.Civ.P. 15(a). Whether to grant or deny leave to amend thereunder is ostensibly within the sound discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (dictum [3]); *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991); *Campbell v. Ingersoll Mill. Mach. Co.,* 893 F.2d 925, 927 (7th Cir.1990). "Discretion," however, may be a misleading description of the district court's authority. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (5th Cir.1981). The plain language of the rule directs the court to grant leave "when justice so requires," Fed.R.Civ.P. 15(a), and the court must respect the spirit of the rule, which is tolerant toward amendments. *Jafree v. Barber,* 689 F.2d 640, 644 (7th Cir. 1982). Rule 15(a) thus evinces a bias in favor of granting leave to amend. *Dussouy,* 660 F.2d at 597. Unless there is a substantial reason to deny leave to amend, therefore, the discretion of the district court is not broad enough to permit denial. *Id.* at 598.

The requirement of judicial approval, however, means that the right to amend is not absolute. *Mertens v. Hummell,* 587 F.2d 862, 865 (7th Cir.1978). Leave to amend is appropriately denied, for apparent or declared reasons, *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Figgie International, Inc. v. Miller,* 966 F.2d 1178, 1180 (7th Cir.1992), where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.

*Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Figgie International, Inc.,* 966 F.2d 1178, 1180 (7th Cir.1992); *Villa,* 924 F.2d at 632. If there are substantial reasons to deny amendment, a court may weigh in the movant's favor any prejudice that will arise from denial. *Dussouy,* 660 F.2d at 598; *Bamm v. GAF,* 651 F.2d 389, 391 (5th Cir.1981). Finally, it is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation. *Dussouy,* 660 F.2d at 598; *see, also, Zenith Radio,* 401 U.S. at 329, 91 S.Ct. at 801; *Summit Office Park v. United States Steel,* 639 F.2d 1278, 1286 (5th Cir.1981) (Wisdom, J., dissenting); *Lone Star Motor Import v. Citroen Cars,* 288 F.2d 69 (5th Cir.1961); *see, generally,* Rule 1, Fed.R.Civ. P.[4]

### 1. Undue delay

The public, of course, has an interest in the prompt resolution of legal disputes. *Tamari v. Bache & Co., S.A.L.,* 838 F.2d 904, 909 (7th Cir.1988). Thus, the longer the delay, the greater the presumption against granting leave to amend. *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992) (citing *Tamari,* 838 F.2d at 908); *see also, Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1184 (7th Cir.1986) ("considerations of delay and prejudice may preclude automatic grant of an amendment"); 6 Wright & Miller, Federal Practice and Procedure § 1488 at 439 (1971) ("[T]he risk of substantial prejudice increases with the passage of time"). Mere passage of time, however, need not result in refusal, *Feldman v. Allegheny Int'l, Inc.,* 850 F.2d 1217, 1225 (7th Cir.1988); on the con-

---

amend the party's pleading only by leave of court or by written consent of the adverse party: and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

**3.** In *Foman,* the Supreme Court held that the First Circuit Court of Appeals had erred in affirming the district court's denial of petitioner's motion to vacate the judgment of dismissal in order to allow amendment of the complaint, since it appeared from the record that the

amendment would have done no more than state an alternative theory of recovery, and thus denial of the motion without any apparent justifying reason was an abuse of discretion.

**4.** Rule 1 states:

These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination of every action.

Fed.R.Civ.P. 1.

trary, it is only *undue* delay that forecloses amendment. *Dussouy*, 660 F.2d at 598.

■ The burden to the judicial system itself, *e.g.*, from delaying resolution of the case, can justify denial of leave to amend, even if the amendment would not prejudice the opposing party. *Perrian*, 958 F.2d at 194, 195 (relying on *Nolin v. Douglas Co.*, 903 F.2d 1546, 1550 (11th Cir.1990); *Tamari*, 838 F.2d at 908. Leave to amend sought shortly before trial may be denied, *Campbell*, 893 F.2d at 927, for example, because it would serve to defeat the public's interest in the expedient resolution of legal disputes. *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379 (7th Cir.1990). Thus, with the passage of time (and acceptance of earlier amendments), the party seeking leave to amend must justify that request by more than invocation of the concept of the liberality of Rule 15(a). The burden is then on the movant to show a valid reason for the neglect and delay. *Te–Moak Bands of Western Shoshone Indians v. United States*, 948 F.2d 1258, 1263 (Fed.Cir.1991); *Dussouy*, 660 F.2d at 598 n. 2. Such a shift becomes appropriate, however, only if the delay imposes on the court, *e.g.*, requiring it to try the case on various theories *seriatim*, or presents the possibility of serious prejudice to the opponent. *Dussouy*, 660 F.2d at 598 n. 2; *see also, Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).

### 2. Failure to cure

■ As with any complaint, of course, where the proposed amendment fails to allege facts which could support a proper theory of liability or fails to demonstrate substantial merit, leave to amend is properly denied. *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir.1987) (citing *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979)); *Glick v. Koenig, et al.*, 766 F.2d 265, 268 (7th Cir.1985); *Brandt v. Grounds*, 687 F.2d 895, 899 (7th Cir.1982). Similarly, the proposed amendment is properly rejected where it fails to cure the original pleading. *Glick*, 766 F.2d 265, 268 (7th Cir.1985); *Shashoua v. Quern*, 612 F.2d 282, 285 (7th Cir.1979). Even where the proposed amendment satisfies the latter condition, it may be rejected for failing to do so earlier. *Te–Moak Bands*, 948 F.2d at 1261 (movants' failure to make known claims earlier falls under "possibility of earlier curing" apparent exception) (citing *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir.1982)); *see also, Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982) (movants failed to correct pleading deficiencies even though information was available before the first amendments were filed), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1982); *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990) (affirming denial of leave to amend where, *inter alia*, litigant was aware of facts underlying claim before filing deadline [for an earlier pleading] and presented no justification for delay).

### 3. Undue prejudice

■ A court may deny leave to amend to avert prejudice to the nonmovant. *Webb v. City of Chester, Ill.*, 813 F.2d 824, 835 (7th Cir.1987); *Bohen*, 799 F.2d at 1184. In fact, some courts have held that prejudice *must* be shown to deny leave to amend. *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir.1977); *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir.1970) (in the absence of prejudice or bad faith, court finds delay alone insufficient to support denial); *Hanson v. Hunt Oil Co.*, 398 F.2d 578, 582 (8th Cir.1968).

■ The proscribed prejudice is that which "outweighs the moving party's right to have the case decided on the merits. *Alberto–Culver Co. v. Gillette Co.*, 408 F.Supp. 1160, 1161–62 (N.D.Ill.1976). To establish *undue* prejudice, therefore, the nonmovant must show "that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it could have offered had the amendment been timely." *Azarbal v. Medical Center of Delaware, Inc.*, 724 F.Supp. 279, 285 (D.Del.1989). The burden is on the nonmovant to show such prejudice, *Beeck*, 562 F.2d at 540, and the court must examine the issue in light of the particular facts of the case. *Id.; Standard Title Ins. Co. v. Roberts*, 349 F.2d 613, 622 (8th Cir.1965).

Prejudice incident to amendment generally arises from inadequate notice by the movant, *Dussouy,* 660 F.2d at 599, and detrimental reliance by the nonmovant. *Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1134 (6th Cir.1980); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973). Prejudice may result, for example, from an amendment that changes the character of the litigation. *See, e.g., Deasy v. Hill,* 833 F.2d 38, 42 (4th Cir.1987) ("The proof required to defend against this new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary"); *Isaac v. Harvard University,* 769 F.2d 817, 829 (1st Cir.1985) (no abuse of discretion where district court denied amendment which would "very materially change the nature of the complaint"); *Mercantile Trust Co. v. Inland Marine Products Corp.,* 542 F.2d 1010, 1013 (8th Cir.1976) (no abuse of discretion where district court refused to allow late amendment which would add new theories of defense and which "would necessarily reopen much of the discovery"); *but see, Dussouy,* 660 F.2d at 598 (citing *Foman,* 371 U.S. 178, 83 S.Ct. 227) ("The Supreme Court required that the amendment be permitted even though it changed the theory of the case"). Prejudice may also arise from the length of the proposed amendment and the new counts or parties sought to be added. *Mertens,* 587 F.2d at 865 (denying leave to amend, in part because "This pleading is 93 pages long and consists of 293 paragraphs ... The complaint consists of sixty-one counts against twenty-five different defendants ... in all twenty defendants would be added to those presently in the case") (adopting the opinion of the N.D.Ill.); *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) ("Amending a complaint to add a party poses an especially acute threat of prejudice to the entering party"); *but see, id.* ("This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties"). The adequacy of the notice provided by the movant's prior pleadings, too, may be relevant. *Deasy,* 833 F.2d at 41, 42 ("The burden rests primarily on the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim"; "trial courts retain the power to ensure that pleadings perform their proper function of framing the issues and facilitating the fair conduct of litigation"); *Dussouy,* 660 F.2d at 599 (where prior pleadings gave adequate notice by making essentially the same challenges to defendant's conduct, court found no undue prejudice to original defendant by amendment adding new parties). The resulting reiteration of discovery, of course, can prejudice the nonmovant. The scope of the court's discretion in this area, however, is very broad. *Estes,* 636 F.2d at 1134. Thus, the court may tax the costs of repeated discovery proceedings or other costs incident to amendment against the movant. *Dussouy,* 660 F.2d at 599; *Bamm,* 651 F.2d at 392 n. 5; *Estes,* 636 F.2d at 1134; 6 Wright and Miller, Federal Practice & Procedure, § 1486 at 423 *et seq.*

### B. Analysis

#### 1. Joinder of Keith D. Nowak and Lieberman & Nowak

Paliafito's proposed Second Amended Counterclaim and Third–Party Complaint ("Amendment") adds as third-party defendants Keith D. Nowak ("Nowak") and Lieberman & Nowak ("L & N"), previously attorneys for the Mantae defendants. Essentially, Paliafito now seeks to charge Nowak, as an agent of the Mantae defendants, and L & N, as a partnership jointly and severally liable for the alleged wrongful acts of Nowak, with the alleged misrepresentation and fraud previously attributed solely to the Mantae defendants. (Amendment at ¶¶ 2, 10.)

In response, the Mantae defendants argue that they would be severely prejudiced by the Amendment because it would force the disqualification of their lead counsel, Nowak and L & N, with whom they have a long-standing relationship. (Memorandum in Opposition at 5.) They further argue that there exist no considerations countervailing such prejudice, in that no new facts are alleged in the Amendment and neither Nowak nor L & N acted as a principal with respect to any disputed transaction. (*Id.* at 9, 13.) Finally, the Mantae defendants argue that the Amendment is sought in bad faith. (*Id.* at 19.)

The metamorphic posture of this case, of course, has wrought havoc with the Mantae defendants' first argument. In that Nowak and L & N have already sought and been granted leave to withdraw therefrom, *supra* n. 5, with Joy Lee's blessing, (*see* Statement on Substitution of Counsel of April 19, 1993, Ex. A (letter from Joy Lee to Attorney David Loeffler)), their representation of the Mantae defendants stands to suffer no prejudice by the Amendment. The Mantae defendants will not be deprived of their chosen attorneys, *cf. Food Service, Inc. v. Trade Street Research, Inc.,* 129 F.R.D. 126, 129 (W.D.N.C.1990), and *Goldberg v. Meridor,* 81 F.R.D. 105, 112–114 (S.D.N.Y.1979), and thus will suffer no hardship incident to involuntary disqualification. *Cf. United States v. New Castle County,* 116 F.R.D. 19 (D.Del. 1987). Likewise, any delay of these proceedings necessitated by the Mantae defendants' retention of new counsel will have been self-inflicted. *Cf. Food Service, Inc.,* 129 F.R.D. at 129; *Knapp v. Whitaker,* 757 F.2d 827, 849 (7th Cir.) (en banc), *cert. denied,* 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985).

The Mantae defendants' second argument fares no better. To begin, it is somewhat misleadingly captioned. The first part focuses not on considerations outweighing the prejudice discussed above, but rather on Paliafito's failure to cure its complaint earlier. (*See, e.g.,* Memorandum in Opposition at 12.) Paliafito, the Mantae defendants assert, was aware of the facts relating to Nowak and L & N as alleged in the Amendment long before filing it, as demonstrated by the fact that they are virtually identical to those in the First Amended Counterclaim filed on December 11, 1991. (*Id.*) As such, they claim, Paliafito bears the burden of establishing that the Amendment is sought in good faith—a burden Paliafito has not met. In the second part of their second argument, the Mantae defendants contend essentially that the amendment fails to state a claim, in that neither Nowak nor L & N has ever acted as a principal with respect to any disputed transaction. (*Id.* at 16.)

As to the first part of the second argument, the Court acknowledges the movant's duty to seek to cure an earlier pleading at the earliest available opportunity, *i.e.,* without undue delay. *Te–Moak Bands,* 948 F.2d at 1261 (citing *Carson,* 689 F.2d at 584); *see also, Chitimacha Tribe of Louisiana,* 690 F.2d at 1163; *Amendola,* 907 F.2d at 764. Contrary to the Mantae defendants' assertions, however, there appears to have been no undue delay here. Paliafito filed the Amendment within one (1) week of the preliminary hearing held in this matter in April of 1991, and evidence revealed at that hearing, the Court finds, constitutes an arguably new factual basis for the Amendment. (*See* Reply at 9–10.)

Were it otherwise, the argument would nevertheless fail, in that the Mantae defendants demonstrate no prejudice incident to Paliafito's failure to earlier cure, *see, e.g., Beeck,* 562 F.2d at 540; *Hanson,* 398 F.2d at 582; *Farkas,* 429 F.2d at 851, except that attendant upon the disqualification of Nowak and L & N, which the Court has discussed and dismissed above.

Paliafito's bad faith, moreover, is hardly "[t]he only explanation that can be inferred from these circumstances." (*Contra* Memorandum in Opposition at 13.) The Court finds, for purposes of both the first part of the second argument and the third argument raised by the Mantae defendants, that Paliafito's burden of good faith in seeking amendment at this time (in fictional docket-time, essentially one (1) week after the preliminary hearing)—to whatever extent particularly required in the failure to cure situation under *Salwen Paper Co., Profit Sharing Retirement Trust v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 79 F.R.D. 130, 133 (S.D.N.Y. 1978) and *Excalibur Oil, Inc. v. Sullivan,* 659 F.Supp. 1539, 1547–48 (N.D.Ill.1987)—has not gone unmet. Indeed, though Paliafito's move to amend is, to put it mildly, aggressive, it does not lack colorable basis in law and fact. Under the *Salwen Paper Co.* line of authority, no more is required. *Salwen Paper Co.,* 79 F.R.D. at 133 ("the plaintiff has the burden of establishing good faith by at least a prima facie showing of a possibility of the amender's ability to establish factual support for its claims" (citations omitted)). Recurrent lapses in civility among counsel and parties to this action, (*see* Memorandum

in Opposition at 19–20), though sad testament to the deprofessionalization of the legal practice and unwelcome by this Court, are irrelevant to the amendment issue and do not, in any event, rise to the level of demonstrative bad faith. (*See* Reply at 13–14.) To whatever extent bad faith may arise outside the Court's determination on this motion, moreover, Rule 11, Fed.R.Civ.P., provides an adequate remedy. Fed.R.Civ.P. 11. The fact that Rule 11 has not been invoked seemingly belies that the present charge of bad faith is anything other than tactical.

■ As to the Mantae defendants' second assertion in support of their second argument, whether or not Nowak and L & N actually undertook certain acts on behalf of the Mantae defendants is irrelevant, in that, for purposes of Rule 15, all material allegations sought to be amended are taken as true. *Torriente v. Stackler*, 529 F.2d 498, 499 (7th Cir.1976). So doing, the Court finds the Amendment states a claim regarding Nowak and L & N adequate to survive *Goulding*, 811 F.2d at 1103, *Verhein*, 598 F.2d at 1063, *Glick*, 766 F.2d at 268, and *Brandt*, 687 F.2d at 899.

Indeed, to microeconomists' chagrin, attorneys advise nearly every significant commercial transaction. An attorney, therefore, may not usually be held liable to third parties for acts committed within the scope of his or her attorney-client agency relationship. *Halling v. Hobert & Svoboda, Inc.*, 720 F.Supp. 743, 745–46 (E.D.Wis.1989); *Green Spring Farms v. Kersten*, 136 Wis.2d 304, 401 N.W.2d 816 (1987). To the extent Nowak was so acting, (*see* Memorandum in Opposition at 17), therefore, he assumed no liability. *See, e.g., Yoggerst v. Stewart*, 623 F.2d 35, 38 (7th Cir.1980); *Morin v. Trupin*, 711 F.Supp. 97, 105 (S.D.N.Y.1989). Nevertheless, an attorney is liable for acts taken on behalf of a client which are "tortious in character or *beyond* the scope of his honorable employment." *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir.1977) (applying New York law) (emphasis added). Whether the attorney *is* a principal in the wrongdoing, moreover, much less Paliafito's "representation" as to whether it could be proved as to Nowak in the First Amended Counterclaim,

is not dispositive. *Compare Food Service, Inc.*, 129 F.R.D. at 129 ("personal interest") with *Spiegel v. Continental Illinois National Bank*, 609 F.Supp. 1083 (N.D.Ill.1985) ("principals"), *aff'd*, 790 F.2d 638 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). An attorney's fraudulent conduct toward nonclients is basis enough. *See, e.g., Halling v. Hobert & Svoboda, Inc.*, 720 F.Supp. 743, 745–46 (E.D.Wis. 1989); *Hackett v. Village Court Assocs.*, 602 F.Supp. 856, 858 (E.D.Wis.1985). Contrary to the Mantae defendants' assertions, (*see* Memorandum in Opposition at 13–14, 16), moreover, what Paliafito had no basis to allege *prior to* the preliminary hearing, (*see, e.g.,* First Amended Counterclaim at ¶ 19), is inapposite; in fact, that they had no basis before the hearing but arguable basis thereafter only lends authority to their position.

Finally, the Court notes, the Mantae defendants' arguments in this regard begin and end with principles of common law agency. Paliafito's proposed counterclaims, however, include alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and the Sherman Act, 15 U.S.C. § 1, *et seq.* Under RICO, attorneys and corporate employees can be persons participating in a RICO enterprise, *see United States v. Masters*, 924 F.2d 1362, 1365–66 (7th Cir.1991); *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1312 (E.D.Pa.1987), and can also be liable, with their clients, for antitrust violations. *See Brown v. Donco Enterprises, Inc.*, 783 F.2d 644, 646 (6th Cir.1986).

Paliafito's motion to amend, to the extent it seeks to join Nowak and L & N as third-party defendants, will therefore be granted.

### 2. Joinder of Dayton Hudson Corp. d/b/a Target Stores

■ Paliafito's proposed Amendment also adds as third-party defendants Dayton Hudson Corporation, doing business as Target Stores ("Target"), a retail distributer of the Game. Essentially, Paliafito now seeks to charge Target with breach of contract, (Amendment at ¶¶ 283–94), and tortious interference with Paliafito's contract with the Mantae defendants. (Amendment at ¶¶ 295–99.)

To avert amendment, Target must demonstrate why leave therefor should be denied. *See, e.g., Genentech, Inc. v. Abbott Laboratories,* 127 F.R.D. 529, 530–31 (N.D.Cal.1989); *Koch v. Koch Industries,* 127 F.R.D. 206, 210 (D.Kan.1989). In an attempt to do so, Target claims that amendment would incur undue prejudice. (Memorandum in Opposition at 4.) To establish such prejudice, however, Target must show "that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it could have offered had the amendment been timely...." *Azarbal,* 724 F.Supp. at 285. In this, the Court finds, Target has failed.

Target argues that the Amendment would, in errantly associating Paliafito's claims against Target with Paliafito's claims against other third-party defendants, confuse the jury, (Memorandum in Opposition of March 3, 1993 at 5), damage Target's business relationships, (*id.*), and force Target to make unnecessary expenditures in its defense. (*Id.* at 6.)

The first argument assumes that no relationship exists between Paliafito's claims. On the contrary, however, as the Court has previously found, the events underlying MAI's attempt to receive payment directly from Target are inextricably interwoven with the events underlying Paliafito's claims against the Mantae defendants. (Order of February 8, 1993 ("Consolidation Order") at 9–10.) Thus, as Paliafito argues, (Paliafito's Reply at 3–4), association of Paliafito's claims by the Court or jury may be warranted. Such association, moreover, need not hamper the factfinder. As the Court has previously opined, juries regularly handle complex civil matters and such confusion can be mitigated "by jury instructions and the use of a special verdict form." (Consolidation Order at 11.) As such, Target's first argument is not persuasive.

Target's second argument, whether or not a correct exposition of the consequences of divisive civil litigation, is of no consequence for amendment. Target offers no authority for the proposition that prejudice to the non-movant's reputation may be asserted to block amendment otherwise warranted, nor is the Court aware of any.

Target's third argument bears more consideration, but still no fruit. It is true, of course, that given the complexity of the case as it stands, newly added parties face an enhanced threat of undue prejudice. *See, e.g., Mertens,* 587 F.2d at 865; *DCD Programs, Ltd.,* 833 F.2d at 186. This may be particularly so where, as for the alleged breach of contract claim here, the claim to be added is discrete and relatively minor. This aspect of Paliafito's dispute with Target, after all, is a matter not of whether money is owing, but simply to whom. As demonstrated by the parties themselves at the hearing held in this Court on April 27, 1993, this presents a situation best disposed of by interpleader. In stark contrast, Paliafito's dispute with the other third-party defendants is figuratively and literally global, encompassing all manner of alleged common law and statutory violations. It does not necessarily follow from consolidation, moreover, that *any* amendment thereafter offered is free of undue prejudice, as Paliafito seemingly argues. (Paliafito's Reply at 3–4.) A decision to consolidate is, by necessity, limited to the facts available at the time of the motion. It may prove effective, therefore, for nothing more than the conservation of judicial resources during the preliminary stages of litigation.

Whether or not "minor," however, Paliafito's second proposed claim, tortious interference of contract, is anything but discrete. Paliafito now alleges, for example, that:

> Target interfered with and induced MAI and MCL to breach Paliafito's contract with MCL and MAI by placing orders directly with, and opening a letter of credit in favor of, MCL and MAI without Paliafito's knowledge or approval, in derogation of Paliafito's rights, and in direct violation of Paliafito's demand that it not do so.

Amendment at ¶ 297. On its face, therefore, Paliafito's tortious interference claim is dependent upon a determination that the Mantae defendants did, in fact, breach their contract with Paliafito. As such, as the Court has previously stated, "[i]t appears likely ... that the witnesses in the Paliafito Case will also testify in the Select Case; at least part of their testimony will undoubtedly be duplicative.... In fact, Scott Hupe and Karl

Carlson have already testified in this Court regarding the issues in the Paliafito Case." (Consolidation Order at 10–11 (citation omitted).) Given the interrelationship of the claims, therefore, the threat of prejudice is minimal. To the extent that it actually arises, *e.g.*, from discovery proceedings that must be repeated, the Court can mitigate its effects by taxing the costs incident to amendment to Paliafito. *Dussouy*, 660 F.2d at 599; *Bamm*, 651 F.2d at 392 n. 5, *Estes*, 636 F.2d at 1134; 6 Wright & Miller, Federal Practice & Procedure, § 1486 at 423, *et seq.*

Paliafito's motion to amend, to the extent it seeks to join Target as a third-party defendant, will therefore be granted.

### 3. Addition of claims against Select, Petrovich and Meisenheimer; joinder of Hooper and Burke

■ Paliafito's Amendment adds claims of tortious interference with contract, and of violations of RICO, 18 U.S.C. § 1961, *et seq.*, and the Sherman Act, 15 U.S.C. § 1, *et seq.*, against third-party defendants Select, Sam Petrovich, and Tom Meisenheimer, and adds as third-party defendants Robert Hooper and John Burke, officers of Select (all collectively the "Select defendants"). Essentially, Paliafito now seeks to charge Hooper and Burke with breach of fiduciary duty, (Amendment at ¶¶ 254–57), conspiracy, (*id.* at ¶¶ 273–80), violations of RICO, (Amendment at ¶¶ 184–192), and unjust enrichment. (Amendment at ¶¶ 281–82.)

In response to the former, namely the addition of claims, the Select defendants argue that "[a]t its core . . . this matter basically is a breach of contract case," (Memorandum in Opposition at 3), and that, given the amount of resources expended to address Paliafito's motion for attachment, the Court should therefore exercise its discretion to "contain the boundaries of this contract action." (*Id.*)

No matter how similarly inclined, however, the Court cannot deny amendment on the basis of mere vapor. Given the presumptions in favor of allowing amendment, *see, e.g., Jafree*, 689 F.2d at 644; *Dussouy*, 660 F.2d at 598, the Court feels compelled to grant leave for it absent evidence of one of the factors elucidated by the Supreme Court

in *Foman, supra. Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Select makes no express allegation thereof, and whatever can be winnowed from Select's argument—perhaps prejudice resulting from the magnitude of discovery necessitated by Paliafito's related disputes with other parties—is insufficient. The Court recognizes, of course, perhaps more than any party, the black hole-esque nature of this litigation, but finds that it reflects nothing so much as the complex nature of modern commercial relationships and the limited capacity of the judicial process to referee them.

In response to the joinder of Hooper and Burke, the Select defendants argue that, because the Amendment could not, as a matter of law, withstand a motion pursuant to Rule 12(b)(6), Fed.R.Civ.P., amendment is futile and must be denied. (Memorandum in Opposition at 4.) As Paliafito makes no allegation that Meisenheimer, Petrovich, Hooper or Burke were acting in any manner other than on behalf of Select, the Select defendants assert, they are not recognizable parties to a conspiracy with "Select, MAI or anyone else." The Court agrees that, if this were true, leave to amend would be properly denied as futile. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. As Paliafito points out, however, (Paliafito's Reply at 3 n. 3), the authority offered in support of Select's assertions is distinguishable in that it only prohibits recognition of a conspiracy between an officer of a corporation and the corporation itself, not that between an officer and other parties. *See, e.g., Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972); *Elbe v. Wausau Hospital Center*, 606 F.Supp. 1491 (W.D.Wis. 1985); *McCluney v. Joseph Schlitz Brewing Co.*, 489 F.Supp. 24, 26 (E.D.Wis.1980) (Gordon, J.). Here, the conspiracy Paliafito alleges is not between Select and its officers, but between Select, its officers, and other parties. (Amendment at ¶¶ 273–80.) As such, the Court cannot conclude that Paliafito's conspiracy claim must fail as a matter of law. As for the joinder of Hooper and Burke in the other claims listed above, Select makes no specific objection, and the Court, effecting liberality of amendment, will thus allow their addition.

Paliafito's motion to amend, to the extent it seeks to add claims against Select, Petrovich, and Meisenheimer, and seeks to join Hooper and Burke, will therefore be granted.

4. Addition of all other claims and parties

In that the Court finds no substantial reason to deny leave to amend, *Dussouy*, 660 F.2d at 597, addition of the other claims and parties will therefore be granted.

## III. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Paliafito's "Motion for Leave to File Its Second Amended Counterclaim and Third–Party Complaint" be **GRANTED.**

**SO ORDERED.**