687 F.2d 895
 3 Employee Benefits Ca 1780
 Kenneth BRANDT, Glenn McHenry, Henry Reitz, Trustees of the
Smithco Fabricators, Inc. Profit Sharing Plan &
Trust, Plaintiffs-Appellants,
v.
Edward GROUNDS and The Mount Prospect State Bank, an
Illinois Banking Corporation, Defendants-Appellees.
 No. 81-1100.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1981.
Decided July 6, 1982.
 
 1
 Sigi Offenbach, Leoris & Cohen, Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 Harry D. Lavery, Berger, Newmark & Fenchel, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before CUMMINGS, Chief Judge, and CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.*
 
 
 4
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 5
 This is an appeal from two orders of the District Court. The first order dismissed Count III of the second amended complaint for failure to state a claim under the Employee Retirement Income Security Act (hereafter "the Act" or "ERISA"), 29 U.S.C. § 1001 et seq. The second order denied plaintiffs' Motion for Leave to Amend Count III. The plaintiffs, the Trustees of the Smithco Fabricators Inc. Profit Sharing Plan & Trust (hereafter "the Trust"), contend that the District Court erred in its construction of ERISA and that it abused its discretion in denying leave to amend the complaint. For the reasons stated below, we affirm.
 
 
 6
 Appellants brought this action against Edward Grounds, a former trustee, and the Mount Prospect State Bank (hereafter "the Bank") seeking to recover approximately $175,000 allegedly converted by Grounds. During the period from November 11, 1975 through August 17, 1978 Grounds withdrew the money from two savings accounts maintained by the Trust at the Bank.[1] Withdrawals from those accounts required the signatures of two trustees. Grounds obtained approximately $14,600 by forging the signature of another trustee, Glenn McHenry, on the withdrawal slips. The balance of the $175,000 was withdrawn by obtaining McHenry's signature under false pretenses.
 
 
 7
 When the defalcation was discovered, the trustees brought this action against Grounds and the Bank. As amended, Count I of the complaint alleged a breach of fiduciary duty (under ERISA) against Grounds, Count II alleged a breach of the Bank's duty as a depositor (for accepting the forged instruments) and Count III alleged a breach of fiduciary duty (under ERISA) against the Bank.
 
 
 8
 On October 6, 1980, the District Judge granted the Bank's Motion to Dismiss Count III for failure to state a claim for which relief can be granted. Count III had alleged that the Bank had provided investment advice for a fee and therefore was a fiduciary under 29 U.S.C. § 1002(21)(A)(ii). However, the Court reasoned that since there were no allegations that the losses were caused by any investment advice provided by the Bank, the Bank could not be held liable as a fiduciary under the Act. 502 F.Supp. 598, D.C.Ill.
 
 
 9
 Subsequent to the dismissal order, the plaintiffs filed a Motion for Leave to Amend Count III. The proposed amendment still claimed a breach of fiduciary duty by the Bank, but alleged that in addition to providing investment advice, the Bank had exercised significant control over the Trust assets by executing investment transactions approved by the trustees. The plaintiffs alleged that as a result of that control, the Bank's fiduciary duty extended to the disposition and withdrawal of Trust assets. The alleged breach of this duty was the Bank's issuance of cashier's checks payable to Grounds personally (as distinguished from payable to him in his representative capacity as trustee). The trustees' Motion for Leave to Amend was denied on November 7, 1980.[2] The plaintiffs then filed this appeal.
 
 
 10
 The definition of "fiduciary" for purposes of ERISA is stated in 29 U.S.C. § 1002(21)(A):
 
 
 11
 "... a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan ..."
 
 
 12
 An ERISA fiduciary must perform his duties in accordance with the standards provided in 29 U.S.C. § 1104. A violation of those standards can subject the fiduciary to liability under either 29 U.S.C. § 1109 (relating to general fiduciary liability) or 29 U.S.C. § 1105 (relating to liability for breach of a co-fiduciary).
 
 
 13
 Appellants claim that the Bank qualifies as a fiduciary as a result of its providing investment advice for a fee.[3] They contend that the Bank violated the prudent man standard of 29 U.S.C. § 1104(b) by issuing cashier's checks to Grounds personally and should be liable for that breach under 29 U.S.C. § 1109 or alternatively, under 29 U.S.C. § 1105(a)(2) for the breach by Grounds.
 
 
 14
 We note that there is no allegation that the Bank was a "named fiduciary" as defined in 29 U.S.C. § 1102(a)(2). Therefore, assuming that the Bank became a fiduciary by providing investment advice, its fiduciary status existed only "to the extent" that it provided that advice, 29 U.S.C. § 1002(21)(A). As noted by the District Judge, the phrase "to the extent" obviously suggests a limitation of the fiduciary responsibility. This is supported by the regulations:
 
 
 15
 "A fiduciary with respect to the plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act. The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan". 29 C.F.R. § 2509.75-8(FR-16A)[4]
 
 
 16
 Thus, it appears that the personal liability of the Bank would be limited to its violations of 29 U.S.C. § 1104 in performing its investment advising functions.
 
 
 17
 In support of their proposed amended Count III, Appellants contend that the Bank's alleged violations of its fiduciary duties fall within the parameters of investment advice as provided in the regulations, citing 29 C.F.R. § 2510.3-21(a)(2).[5] That regulation provides:
 
 
 18
 A person who is a fiduciary with respect to a plan by reason of rendering investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or having any authority or responsibility to do so, shall not be deemed to be a fiduciary regarding any assets of the plan with respect to which such person does not have any discretionary authority, discretionary control or discretionary responsibility, does not exercise any authority or control, does not render investment advice ..."Noting the emphasized portion quoted above, appellants argue that because the misappropriated money was held in savings accounts in the Bank, the Bank exercised control over those assets. However, as discussed previously, the Bank's fiduciary status was limited to its function as an investment advisor. The regulation cited by the appellants does not alter that limitation, but merely adds another, i.e. the investment advisor is a fiduciary only as to the assets with which he performs an advisory function. The regulation which defines the investment advisor's function is 29 C.F.R. § 2510.3-21(c)(1)[6] and none of the activities described therein correspond to depository transactions.
 
 
 19
 Furthermore, to accept appellants' theory would impose inconsistent obligations on the Bank. Count II of the Second Amended Complaint alleged
 
 
 20
 9. "By the terms of the Agreement between Defendant Bank as a depository and the Trust as a depositor, the Defendant Bank was under a duty to honor or accept withdrawal slips signed by Trustees whose signatures were provided to the Bank on the aforementioned signature cards."
 
 
 21
 Thus, while the Bank was under a duty to honor the withdrawal slips, appellants would impose upon it the additional duty of analyzing the transaction, determining its prudence, and refusing the withdrawal if it appeared imprudent. These duties are not reconcilable.
 
 
 22
 Therefore, we conclude that the Bank was not acting as a fiduciary to the Trust when it performed its depository function in the withdrawal transactions. Thus, liability under 29 U.S.C. § 1109(a) could not exist for those actions. That statute provides in pertinent part:
 
 
 23
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ... (emphasis supplied)
 
 
 24
 The emphasized language clearly indicates that a causal connection is required between the breach of fiduciary duty and the losses incurred by the plan. Since we have already concluded that the "responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" were limited in application to the Bank's investment advising function, it is clear that without a causal connection between the advice and the loss no liability can exist under 29 U.S.C. § 1109(a). This conclusion is consistent with the regulations, see 29 C.F.R. § 2509.75-8 (FR-16A) quoted supra p. 897. No such causal connection was alleged in the second amended complaint or the proposed amendment. Similarly, the Bank cannot be liable under 29 U.S.C. § 1105(a)(2) since that statute only creates co-fiduciary liability for violations of 29 U.S.C. § 1104(a)(1) which occur in the fiduciary's performance of its "specific responsibilities which give rise to (its) status as fiduciary."
 
 
 25
 Accordingly, we conclude that the District Court was correct in determining that Count III of the Second Amended Complaint and the proposed Count III submitted with plaintiff's Motion for Leave to Amend failed to state a claim under ERISA. Since the proposed Count III failed to state a claim, it was not an abuse of discretion for the District Judge to deny leave to amend, Cohen v. Illinois Institute of Technology, 581 F.2d 658 (7th Cir. 1978).
 
 
 26
 Affirmed.
 
 
 
 *
 Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation
 
 
 [1]
 For purposes of reviewing an order on a motion to dismiss, we must consider all factual allegations of the complaint to be admitted, Jenkins v. McKeither, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 1848-1849, 23 L.Ed.2d 404 (1969); Parr v. Great Lakes Express Comp., 484 F.2d 767, 770 (7th Cir. 1973)
 
 
 [2]
 On that same date the Trustees obtained a default judgment against Grounds for $175,000. On December 8, 1980, the Court entered a summary judgment against the Bank on Count II in the amount of $14,600 and a default judgment on the Bank's cross-claim against Grounds in an equal amount
 
 
 [3]
 The Bank vigorously contests the allegation that it was providing investment advice; however, as noted previously, we must accept the allegations of the complaint as admitted, see fn. 1 supra
 
 
 [4]
 These provisions are part of a regulation entitled "Questions and Answers Relating to Fiduciary Responsibility under the Employee Retirement Income Security Act of 1974." The entire question and answer reads:
 Q. Is a fiduciary who is not a named fiduciary with respect to an employee benefit plan personally liable for all phases of the management and administration of the plan?
 A. A fiduciary with respect to the plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act. The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions which he or she performs with respect to the plan. With respect to the extent of liability of a named fiduciary of a plan where duties are properly allocated among named fiduciaries or where named fiduciaries properly designate other persons to carry out certain fiduciary duties, see question FR-13 and FR-14.
 In addition, any fiduciary may become liable for breaches of fiduciary responsibilities committed by another fiduciary of the same plan under circumstances giving rise to co-fiduciary liability, as provided in section 405(a) of the Act.
 
 
 [5]
 This regulation is reproduced in 26 C.F.R. § 54.4975-9(c)(2)
 
 
 [6]
 29 C.F.R. § 2510.3-21(c)(1) provides:
 (c) Investment Advice. (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:
 (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
 (ii) Such person either directly or indirectly (e.g., through or together with any affiliate)-
 (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
 (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.
 This regulation is reproduced in 26 C.F.R. § 54.4975-a(c)(1).