**Alan HECHT and Michael Hecht, as Co–Executors of the Estate of Sigmund Hecht, deceased, Plaintiffs,**

v.

**COLORBOARD PACKAGING CORP., George S. Hecht, individually and as Trustee of the Colorboard Packaging Pension Plan Trust, and Martin Hecht, Defendants.**

No. 90 Civ. 1000 (CHT).

United States District Court, S.D. New York.

June 27, 1994.

---

Bondy & Schloss, New York City (Joel S. Forman, Jacqueline I. Meyer, of counsel), for plaintiffs.

Bizar & Martin, New York City (Philip A. Greenberg, of counsel), Cohen & Marks, Bayside, NY (Martin E. Marks, of counsel), for defendants.

## OPINION AND ORDER

TENNEY, District Judge.

Plaintiffs, Alan and Michael Hecht, acting as co-executors of their father's estate, bring this action for illegally withheld and undistributed pension benefits against defendants George Hecht, the former pension plan trustee; Martin Hecht, his son and a current trustee; and Colorboard Packaging Corporation ("Colorboard"), the plan's sponsor company. Plaintiffs allege a variety of claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, particularly 29 U.S.C. §§ 1104 and 1132. Plaintiffs seek money damages as well as an injunction against the current trustees prohibiting their future participation in the governance of the pension plan. The former pension plan trustee, George Hecht, is deceased; the current plan trustees are Rose Hecht Sherman and Martin Hecht.

This action was originally before Judge Michael B. Mukasey of the Southern District of New York, who presided over pre-trial matters before transferring the case to these chambers. The court held a bench trial in December, 1993. For the following reasons, the court dismisses plaintiffs' claims.

## BACKGROUND

Sometime in the mid–1950s, George Hecht, Sigmund Hecht and Rose Hecht Sherman formed Pound Ridge Properties, Inc., one asset of which was a 70 acre parcel of undeveloped real estate in the town of Pound Ridge, located in northern Westchester County, New York.[1] In 1964, Pound Ridge Properties conveyed this 70 acre parcel to the Pension Plan of Mid–States Container Corporation ("Mid–States") in exchange for a $40,000 promissory note. Mid–States was a closely held family corporation in the business of manufacturing corrugated cardboard boxes. Mid–States' three principal shareholders were George Hecht, Sigmund Hecht and Rose Hecht Sherman, who were also the company's President, Vice-president and Secretary/Treasurer, respectively. George Hecht and Rose Hecht Sherman were also brother and sister of the plaintiffs' decedent, Sigmund Hecht.

In 1976, Mid–States changed its name to Colorboard Packaging Corporation. George Hecht, Sigmund Hecht and Rose Hecht Sherman remained the three principal shareholders and officers, each with a one-third interest in the company. Subsequently, on October 1, 1976, the Mid–States Pension Plan was restated. The pension plan agreement, now entitled the "Colorboard Packaging Corp. Retirement Plan and Trust," (the "Plan"), purportedly conformed to financial reporting, disclosure and other requirements of ERISA.

The terms of the Plan required, among other things: 1) that the maintenance of the Plan be overseen by a three member administrative committee, 2) that the Plan members be comprised of all qualified employees with over one year of service, 3) that the employer (Colorboard) contribute 20 percent of the Plan members' future earnings and 10 percent of their past earnings to the Plan, 4) that an Investment Fund composed of a portion of participating employee earnings be contributed by Colorboard and maintained by the trustee for the benefit of Plan mem-

---

1. Although the parties have referred to this parcel throughout the litigation as being 70 acres in size, it is likely that its original size was at least 81 acres, since 11 acres of this property was sold on September 14, 1982 and there are references in the record to the size of the parcel being 70 acres after that date.

bers, 5) that an "individual account" be maintained for each of the Plan members and 6) that financial statements and disclosures concerning Plan investments be made available to participants on a periodic basis pursuant to ERISA requirements.

The Plan also provided for Retirement and Death Benefits to be paid in the following manner:

## SECTION 7

### BENEFITS FOR MEMBERS

7.1 The benefits of a member shall not be distributed until his death, retirement or other termination of service and then only to the extent hereinafter provided:

a. *Death*

In the event of a death of a . . . retired member before complete distribution of his benefit, the net value of his account or all the undistributed balance of his retirement or termination benefit, as the case may be shall constitute his Death Benefit and shall be distributed as provided in Section 8 to the deceased members designated beneficiary or, if no designation of beneficiary is then in effect, to the estate of the deceased member.

b. *Retirement*

Upon retirement the net value of his account shall constitute his Retirement Benefit and shall be distributed as required in Section 8.

. . . .

## SECTION 8

### METHOD OF PAYMENT OF BENEFITS

8.1 The benefits provided in Section 7 shall be distributed by whichever of the following methods or a combination thereof, the Committee, in its sole discretion, may determine:

a. By payments over a period of time not to exceed 10 years in approximate equal

installments paid at least annually over the 10 year period, such payments shall earn interest at the current rate.

b. By lump sum payment.

c. (deleted)

d. When an optional method of settlement is selected, the period certain or periods certain over which installments are payable shall not exceed the life expectancy of the participant or joint lives and last survivor expectancy of the participant and his spouse. In any distribution option, the present value of the payments to be made to the participant, must be more than Fifty (50%) percent of the value of total payments to be made to the participant and his beneficiaries.

Pl. Exh. 1 (as amended by Pl. Exh. 2, August, 1978).

Despite the lengthy and detailed provisions of the Plan document, the Colorboard Plan has only had three participating members: George Hecht, Sigmund Hecht and Rose Hecht Sherman. Moreover, the assets of the Plan, from its inception until September, 1987, consisted almost entirely of the original undeveloped 70 acre parcel of real estate conveyed by Pound Ridge Properties, Inc. to Mid–States in 1964.

On October 1, 1977, Sigmund Hecht retired from Colorboard. Apparently, Sigmund's one-third interest in Colorboard was bought out at that time. At Sigmund's retirement, the Plan's assets consisted of the above-mentioned 70 acre parcel and approximately $90,000 in cash.

On February 24, 1979, Sigmund Hecht drafted a letter to the Plan trustee, his brother George, stating his intention to "draw upon [his] Rights in the Pension Fund."[2] The trustee's response to this letter, if any, is not preserved in the trial record. On March 16, 1979, Sigmund again wrote to the Plan trustee concerning benefits owed to him under the Plan. The letter stated, in part:

---

**2.** Defendants dispute whether this draft, which presumably was among Sigmund's possessions at his death, was ever finalized and sent or received. However, the draft makes reference to previous and future demands for pension fund benefits, at least one of which was sent by certified mail, and it is almost certain that, even if defendants did not receive the February 24 letter, they were aware of the sentiments expressed therein.

I am, as required under the terms of the Plan, notifying you by registered mail that it is my wish to receive starting April, 1979 a share of my vested interest in the pension plan. It is also my wish that a licensed appraiser be hired to appraise the property located in Pound Ridge Westchester NY known as Pound Ridge Properties & owned by the Pension Fund in order to properly evaluate the fair market value & estimate my share in all the assets of the Pension Fund.

In 1979 and again in 1980, Sigmund Hecht received payments in three irregular $10,000 installments, ostensibly reflecting his share of the cash held by the Plan.[3] While the record shows that the plan trustee did not, as requested by Sigmund, obtain an appraisal of the Pound Ridge property in 1979, 1980 or 1981, there were no further written communications to defendants by or on behalf of Sigmund concerning the Plan during those years.

On September 14, 1982, the Plan trustee contracted to sell 11.8 acres of the Pound Ridge property to Paul Sturz, a real estate developer, for a total of $177,000. On October 1, 1982, after the closing of the Sturz deal, Mr. Joel Forman, Sigmund's attorney, wrote to George Hecht demanding: 1) cash payment of one-third of the proceeds of the Sturz deal, as agreed to by the parties on April 29, 1982, 2) a conveyance of one-third of the balance of the Pound Ridge property, 3) a full accounting of the income, distributions and expenses of the Plan.

On December 3, 1982, Sigmund wrote to both George Hecht and Rose Hecht Sherman concerning the Sturz deal proceeds, declaring: "we have agreed that in accordance with, among other things, the terms of the Plan, I am entitled to receive one-third of the proceeds of the sale of the Property." In return for this payment, amounting to $30,-000, Sigmund agreed to "waive and release" George Hecht and Rose Hecht Sherman from any other claims arising from the Sturz deal and from claims due to prior sales of the Pound Ridge property.

Sometime in 1984, the Plan trustee began negotiations with Harold Glazer, a real estate developer, concerning the sale of the remainder of the Pound Ridge property. On July 3, 1984, Sigmund Hecht died. His sons, Alan and Michael Hecht, became co-executors of his estate and, under the terms of the Colorboard Plan, Sigmund's estate became entitled to the remainder of his undistributed retirement benefit. On September 17, 1984, Alan Hecht wrote to the Plan trustee requesting an "overall accounting of the pension fund assets and expenses" for purposes of calculating Sigmund's estate tax. When the trustee did not respond, Alan Hecht hired a real estate appraiser who valued the Pound Ridge property at $781,000. Sigmund's estate tax, filed in September 1985, listed one-third of this amount, or $260,000, as the value of his interest in the Colorboard Plan, which was described as "a 1/3 interest in a parcel of real estate property."

Meanwhile, through 1985 and 1986, the Pound Ridge property remained in contract with Harold Glazer, who apparently sought to secure subdivision approvals from the town of Pound Ridge in order to develop the parcel once he acquired possession. On January 20, 1987, Alan and Michael Hecht wrote the Plan trustee, suggesting that the trustee obtain a payment from Glazer in exchange for granting Glazer's request for a three month extension of the contract date. The trustee received approximately $25,000 from Glazer in exchange for the extension, of which the plaintiffs received about $8,000, representing their underlying one-third interest in the Pound Ridge property.

On October 15, 1987, 17 of the 19 lots comprising the Pound Ridge property were sold to Harold Glazer for a total of $955,-085.86. The remainder of the property, numbers four and five of the original 19 lots, totaling approximately 8.3 acres, was withheld from the sale in order to keep the sale price below $1 million, thereby avoiding a large state tax on land sales of over one

---

**3.** The parties dispute whether Sigmund received the full $30,000 to which he was entitled or the lesser sum of $20,000. Defendants have produced evidence, consisting of cancelled checks and bank book records, tending to show that the full $30,000 was paid.

million dollars.[4] The sale of the Pound Ridge property began a period of negotiations over the amount due Sigmund's estate that continued until this lawsuit was filed in 1990.

The inherent unreliability of property valuations and Plan financial statements admitted as evidence in this case hinders any attempt to fix an exact amount due Sigmund's estate.[5] However, the trustee's initial valuation of Sigmund's interest in the Plan, completed on September 29, 1987 and dated as of the day of Sigmund's death on July 3, 1984, listed Sigmund's interest in the Pound Ridge property at $252,841, slightly less than the plaintiffs' valuation for the same period as declared in their 1985 estate tax return. The trustee completed a second valuation on February 2, 1988, dated as of September 30, 1987, in which Sigmund's interest was valued at $308,310.

On June 21, 1988, nine months after the sale of the Pound Ridge property, Sigmund's estate received a distribution from the Plan in the amount of $308,310, reflecting the value of Sigmund's share of the property as estimated in the February 1988 Colorboard Plan financial statement. Apparently, the extensive delay was due to the parties' inability to devise a mutually satisfactory method for the distribution of the remainder of Sigmund's one-third share of lots 4 and 5 of the original 19 lot parcel. The dispute centered on the value to be accorded to the two remaining lots: defendants maintained that the property's value was significantly diminished because the Pound Ridge zoning board had yet to approve a road for the subdivision encompassing the lots.

The parties continued to disagree even after the plaintiffs received their share of the Glazer proceeds, this time with respect to the rate of interest to be applied to the late disbursement of the Glazer proceeds, as well as the value of Sigmund's remaining interest in the Pound Ridge property. The plaintiffs demanded interest on the Glazer proceeds of 11.5 percent and rejected the defendants' counter-offer of 7.5 percent, reflecting the rate of interest actually earned by George Hecht and Rose Hecht Sherman on their share of the proceeds. Similarly, the plaintiffs rejected the trustee's calculation of $130,306 as the value of Sigmund's share in the two remaining Pound Ridge lots, offering their own appraisal of $244,000 valued as of November 7, 1988. Both Pound Ridge lots remain unsold.

The plaintiffs, unable to reach a satisfactory resolution, filed this lawsuit in 1990, invoking federal jurisdiction under ERISA and essentially seeking to compel distribution of Sigmund's one-third share of the two Pound Ridge lots, valued as of November, 1988.

## DISCUSSION

This action results from the parties' inability to agree on a satisfactory value for the liquidation of Sigmund's remaining one-third interest in the Pound Ridge property. Plaintiffs invoke ERISA, 29 U.S.C. § 1104, which imposes a "prudent man" standard of care on a fiduciary's administration of pension plan assets and requires fiduciaries to diversify plan assets and generally to act in accordance with plan documents. Plaintiffs argue that the Colorboard fiduciaries breached their duties by: 1) distributing Plan assets, not in accordance with the Plan documents, but arbitrarily in an abuse of their discretion, and 2) failing to diversify the Plan's investments by keeping most of the

---

4. Although this justification, suggested by the defendants, is not supported by reference to any section of the New York state tax code, it was not disputed, in its essentials, by the plaintiffs. The plaintiffs suggest other improper motives that may have driven the trustee's decision to withhold the lots; however, plaintiffs fail to substantiate these allegations with any convincing evidence.

5. For example, the Plan financial statements, prepared by the accounting firm of Bederson & Co., were in the form of "compilations" stating:

A compilation is limited to presenting in the form of financial statements information that is the representation of the Plan Trustees. We have not audited or reviewed the accompanying statement of net assets available for benefits and, accordingly, do not express an opinion or any other form of assurance on it Pl.Exh. 21. These "compilations," lacking as they do any assurance of accuracy, serve as a poor guide to determining the value of the Plan benefits at issue in this litigation.

assets in the form of the Pound Ridge property. The court rejects plaintiffs' arguments.

Until Sigmund's death, the Plan's only participants were George Hecht, Sigmund Hecht and Rose Hecht Sherman, Colorboard's three officers and shareholders. For many years, the Plan's major asset was a parcel of property that had long been owned by these same people, albeit in corporate form. Naturally, it was the understanding of the participants that this land was held equally between them and that proceeds from the sale of this land would be distributed equally among them. This understanding was manifest both in the evidence presented and by the plaintiffs' requested relief: one-third of the value of the two unsold Pound Ridge lots.[6]

However, this understanding is incompatible with the detailed provisions of the Colorboard Plan. The Plan requires that an "individual account" be maintained for each of the Plan employee members and that employer contributions, determined by the employee member's length of service, be deposited in an "investment fund," the proceeds of which are to be distributed as a retirement or death benefit either in a lump sum payment or in equal ten year installments. In contrast, the arrangement employed by George Hecht, Rose Hecht Sherman, Sigmund Hecht and later, his estate, was that Sigmund's retirement and death benefits would consist of a one-third interest in the Pound Ridge property. The parties understood that this interest would either be bought out by the Plan trustee or be liquidated and the proceeds distributed to Sigmund's estate as the Pound Ridge property was sold and funds became available.

The distribution of the plaintiffs' benefits occurred, not in the arbitrary discretion of the Plan trustee, but gradually upon the sale and liquidation of the Pound Ridge property. While the plaintiffs preferred to have Sigmund's interest bought out by the Plan trustee, the parties have never been able to agree on a mutually satisfactory value for the property. Rather, the plaintiffs generally have

waited until the property was sold to receive their distributions. Moreover, although this payment method varies from the payment method specified in the Plan agreement, the variation was agreed to by the plaintiffs and their decedent, Sigmund Hecht, all of whom negotiated with the Plan trustee concerning the distribution arrangements and all of whom received and cashed checks paid under these arrangements without protest.

The plaintiffs have maintained throughout this action that neither they nor their father ever consented to the trustee's deviation from the terms of the Colorboard Plan. However, the plaintiffs' evidence does not support their assertion. Rather, plaintiffs' evidence shows merely that the trustee was slow to make some initial distributions and that Sigmund wrote to the trustee to secure those payments. As to the trustee's decision to retain the Pound Ridge property as the Plan's sole investment, the plaintiffs never protested this decision and even profited favorably from the investment. Moreover, while the payment schedule employed by the trustee varied widely from the Colorboard Plan, much of the delay was caused, not by the trustee's arbitrary behavior, but by the inability of these parties to satisfactorily resolve the question of how much was due Sigmund's estate.

The court cannot conclude on the basis of this evidence that the Plan trustees have breached their fiduciary duties to the plaintiffs. The defendants were under no duty to concede to all of plaintiffs' demands, no matter how unreasonable, with respect to the liquidation of Sigmund's remaining one-third interest in the Pound Ridge property. However, even assuming, *arguendo*, that the trustee violated the ERISA statute by failing to distribute Sigmund's benefits in accordance with the Plan agreement, the court must still deny plaintiffs' requested relief because plaintiffs failed to establish any harm resulting from defendants' actions. The understanding that evidently existed be-

6. For example, Sigmund Hecht's December 3, 1982 letter states: "we have agreed that in accordance with, among other things, *the terms of the Plan*, I am entitled to receive one-third of the proceeds of the sale of the Property" (emphasis added). Given that the Colorboard Plan does not contain any terms to such an effect, Sigmund can only be referring to an understanding that was held by the Plan participants beyond the provisions of the Plan document.

tween George Hecht, Sigmund Hecht and Rose Hecht Sherman was that Sigmund's one-third interest in the Pound Ridge property would either be bought out by the trustee or be distributed upon the sale or liquidation of the property. Currently, the two Pound Ridge lots at issue in this litigation remain unsold. Absent the trustee's failure or refusal to make a distribution once the property is sold, any damages awarded would be merely speculative.

Moreover, even had the trustee's investment of Plan assets in the form of the Pound Ridge property been a breach of fiduciary duty under ERISA, the plaintiffs' requested relief must be denied for failure to prove the necessary connection between the trustee's breach of fiduciary duty and actual losses incurred by the pension plan. *Brandt v. Grounds,* 687 F.2d 895 (7th Cir.1982) (interpreting 28 U.S.C. § 1109). Here, the plaintiffs have failed to show that the pension plan suffered any loss due to the maintenance of most of the Plan assets in the form of the Pound Ridge property.

Finally, the plaintiffs have failed to prove circumstances warranting the removal of Martin Hecht and Rose Hecht Sherman as trustees. Pursuant to 29 U.S.C. § 1109, courts may order ERISA fiduciaries removed for breach of their fiduciary duties. However, given the lack of evidence of any willful or reckless misbehavior by the current trustees, the court concludes that such relief would be inappropriate.

## CONCLUSION

For all the above reasons, the court finds for defendants and dismisses plaintiffs' claims. This Opinion constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). Judgment to be entered in accordance herewith.

So ordered.