98

David W. SILVERMAN, as Independent Fiduciary of The Unitron Graphics, Inc. Profit Sharing Trust and Unitron Graphics, Inc. Profit Sharing Trust–Union and Non–Union Division, Plaintiff–Appellant,

v.

MUTUAL BENEFIT LIFE INSURANCE COMPANY, Principal Mutual Life Insurance Company And Helene Gorny, Defendants–Appellees,

Jacob Zucker and Aaron Fertig, Defendants.

Nos. 768, Docket 96–7795.

United States Court of Appeals, Second Circuit.

Argued June 2, 1997.

Decided March 10, 1998.

David W. Silverman, New City, NY (Christopher P. Tirro, Granik Silverman, et al., New City, NY, of counsel), for Plaintiff–Appellant.

George Berger, New York City (Bruce J. Turkle, Phillips Nizer, Benjamin Krim & Ballon, LLP, New York City, of counsel), for Mutual Benefit Life Insurance Company and Helene Gorny.

Howard S. Wolfson, New York City (Patricia Anne Kuhn, Whitman Breed Abbott & Morgan, New York City, of counsel), for Principal Mutual Life Insurance Company.

Gary S. Tell, Washington, DC (J. Davitt McAteer, Marc. I. Machiz and Karen L. Handorf, Atty's for the Secretary of Labor, Washington, DC), Amicus Curiae, Department of Labor.

Thomas S. Gigot, Kathryn A. English, Groom and Nordberg, Chtd., Washington, DC, Amicus Curiae, The Insurance Company Benefits Group.

Beth Heifetz (counsel of record), Patricia Dunn, Jones, Day, Reavis & Pogue, Washington, DC, Philip E. Stano, American Council of Life Insurance, Washington, DC, Amicus Curiae, The American Council of Life Insurance.

Before: MESKILL, JACOBS, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

David Silverman ("Silverman"), independent fiduciary of the Unitron Graphics, Inc. Profit Sharing Trust and the Unitron Graphics, Inc. Profit Sharing Trust—Union and

Non–Union Division (the "plan"),[1] brought this suit against Mutual Benefit Life Insurance Company ("Mutual Benefit"), a Mutual Benefit employee named Helene Gorny ("Gorny"), and Principal Mutual Life Insurance Company ("Principal"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Mutual Benefit administered the plan and invested its funds under contract with the plan. Principal took over plan administration and investment after Mutual Benefit's contract was terminated. After Mutual Benefit's administration was terminated, but before Principal received the plan funds, Jacob Zucker and Aaron Fertig, the two plan trustees, embezzled $130,000 in plan funds. Silverman sued Mutual Benefit, Gorny, and Principal on the theory that their violation of various ERISA provisions allowed the embezzlement to occur and prevented recovery of plan funds after the embezzlement.[2] The United States District Court for the Eastern District of New York (Ross, *J.*) granted summary judgment in favor of defendants on all counts.

Silverman alleges that Mutual Benefit and Gorny are personally liable for loss to the plan because, when Mutual Benefit's contract was terminated, they returned the plan's funds to Zucker upon his written request. Mutual Benefit's actions were required under the terms of the plan and Mutual Benefit's contract with the plan. Mutual Benefit's return of plan funds was consistent with the summary plan description (the "SPD") and complied with all relevant Department of Labor ("DOL") regulations. The return of the funds cannot constitute the basis for a finding that Mutual Benefit or Gorny breached their ERISA fiduciary duties, and summary judgment in their favor was properly granted.

Silverman contends Principal should be liable under 29 U.S.C. § 1109(a) because it failed to take steps to remedy the fiduciary breach committed by Zucker and Fertig in violation of 29 U.S.C. § 1105(a)(3). The district court granted summary judgment to Principal because Silverman had failed to

produce evidence from which a jury could find that, at the time of Principal's alleged breach, Zucker or Fertig had money that might have remedied the loss. The majority of our panel agrees. The grant of summary judgment in favor of Principal is therefore affirmed as well.

*Background*

The parties do not dispute the facts giving rise to this action. In 1988, Unitron Graphics, Inc. ("Unitron") established the plan for employee profit-sharing. It was established as an "individual account" or "defined contribution" ERISA plan under 29 U.S.C. § 1002(34). Each participating employee could elect to have Unitron set aside part of his salary as a contribution to the plan; in addition, the company could make matching and discretionary contributions.

The plan had two named trustees: Jacob Zucker and Aaron Fertig, who were owners and officers of Unitron. The plan provided that joint trustees "shall act by a majority of their number but may authorize one or more of them to sign all papers on their behalf." It further provided that Mutual Benefit "may rely on the signature of any Trustee on ... any document used in connection with" a plan-related contract.

The plan's assets were invested pursuant to a group annuity contract between the trustees and Mutual Benefit. The trustees retained the right to cancel the contract at any time.

Mutual Benefit experienced well-publicized financial problems in the Spring and Summer of 1991, which culminated in a July 16, 1991, order of the Superior Court of New Jersey placing Mutual Benefit into court-supervised rehabilitation.

On July 1, 1991, Zucker wrote to Mutual Benefit to cancel the contract. The letter was on Unitron stationery and was signed by Zucker as trustee. The letter requested that Mutual Benefit return the plan funds to Uni-

---

**1.** Unitron established separate plans for union and non-union employees. Since the two plans are identical in all relevant respects, they will be referred to as a single plan.

**2.** Silverman does not seek any relief against Zucker and Fertig in this proceeding.

tron, along with an accounting breakdown for each plan participant. Mutual Benefit did not send the funds to Unitron, apparently because the funds could not properly be paid to the company but only to the trustees in their fiduciary capacity.

On August 15, 1991, Zucker, as plan trustee, wrote a second letter to Mutual Benefit. This letter instructed that the assets of the plan[3] be remitted to the Unitron Graphics Inc. Profit Sharing Trust with a breakdown by participant.

Accordingly, Mutual Benefit liquidated the fund's investments and defendant Gorny, a Mutual Benefit customer service supervisor, approved a check requisition. On August 30, 1991, Mutual Benefit sent Zucker a check for the proceeds in the amount of $239,811.28 payable to the plan.

Zucker deposited the check in the plan's bank account on September 6, 1991. Over the next few weeks, Zucker and Fertig embezzled $130,000 from the account.

On July 2, 1991, prior to receiving plan funds from Mutual Benefit but after sending the first letter cancelling Mutual Benefit's contract, Zucker entered into a new group annuity contract with Principal under which Principal agreed to manage the plan. Zucker and Fertig were named trustees under the contract.

On September 17, 1991, Howard Lowett, Unitron's Vice President of Administration, sent Principal a letter stating that "I am enclosing a breakdown of the check that was sent to us by Mutual Benefit Life," and detailing each plan participant's assets. The breakdown totalled $239,811.28, the amount of the check remitted by Mutual Benefit to Zucker.

On October 8, 1991, Principal received a wire transfer in the amount of $109,811.28. Principal was unable to allocate the money among plan participants because the amount transferred did not correspond with the breakdown sent by Lowett.

On November 5, 1991, Principal sent a letter to Unitron, addressed to Zucker and Fertig as trustees of the plan. Principal stated that it had "received, from what limited recordkeeping data we have, only a portion" of the plan assets liquidated by Mutual Benefit. Principal noted that "[i]t is our understanding that we are to be the only investment manager for your profit sharing plans," and requested that Zucker and Fertig forward the balance of the funds. Principal also noted that employee salary deferral contributions had not been forwarded in the four months since the plan entered into its contract with Principal, although DOL regulations required that they be forwarded within ninety days of their receipt. Principal received no answer.

On November 14, 1991, Principal sent a second letter to Lowett, explaining that "[u]ntil this deposit's allocation is complete, we will place your deposit into an unallocated account." Once again, Principal did not receive a response.

Internal memos indicate that by mid-November Principal recognized the possible existence of a legal problem arising from the missing $130,000 and the apparent failure to submit employee deferral contributions. On January 28, 1992, Principal sent another letter to Zucker and Fertig, in which it noted that the missing $130,000 "must be accounted for," and threatened to refuse to accept additional funds if Zucker and Fertig did not produce the $130,000 or explain its absence within five business days. The letter also noted the failure to remit outstanding employee deferral amounts as required by federal regulation, and asserted that ERISA § 502(l) would require notification to the Secretary of Labor if the funds were not turned over within five business days.

Several days later, Principal received a phone call from a Arnold Freilich ("Freilich"), a consultant acting as representative for Unitron. Freilich advised that Unitron had filed for Chapter 11 bankruptcy and requested that Principal delay informing the DOL about the delinquency in forwarding employee deferral amounts until a buyer could be found for the business. Freilich informed Principal that Zucker had used the

---

**3.** The instructions related to only four of the plan's five investment accounts. The fifth invest-

ment account was subject to the state court rehabilitation order barring payout of funds.

employee deferral funds to meet the company's operating and payroll expenses. Principal told Freilich that it would not delay notifying the DOL about delinquencies; however, no such notification was made. On February 13, an internal memorandum at Principal stated that "the group rep . . . became aware that the trustees were not living up to their fiduciary responsibilities. . . . Legal has been involved."

On March 30, 1992, the DOL wrote Principal to inquire about the status of the plan, the rollover of funds from Mutual Benefit, and employee deferral contributions. On April 2, 1992, Principal sent copies of relevant documents and letters to the DOL disclosing the missing $130,000 and the delinquencies in salary deferral contributions. The DOL was unable to recover any funds in the course of its investigation.

Zucker and Fertig were subsequently indicted for bank fraud, embezzlement, filing of false documents with the IRS, and conspiracy to embezzle funds. Both defendants pleaded guilty to conspiracy to embezzle funds and were ordered to pay restitution. Zucker and Fertig proved to be insolvent. Although a portion of the embezzled funds has been replaced, it appears that the money came primarily from loans and gifts from third parties.

Plaintiff Silverman was appointed as independent fiduciary of the plan with authority to seek recovery of the remainder of the plan assets. Silverman commenced this action against Mutual Benefit, Helene Gorny, and Principal. In his amended complaint, Silverman alleges that defendants violated 29 U.S.C. §§ 1104 and 1105. Silverman claims that the transfer of funds from Mutual Benefit pursuant to Zucker's instructions violated 29 U.S.C. § 1104(a)(1)(D) because it was "not in accordance with any term or provision of the summary plan description," not in accordance with the annuity contract between Mutual Benefit and the plan, and not in accordance with the terms of the plan itself. The complaint also charges that Mutual Benefit

violated 29 U.S.C. § 1104(c) by transferring the plan funds to the trustees. Gorny is alleged to have acted without the requisite care, skill, prudence, and diligence in approving the transfer, in violation of 29 U.S.C. § 1104(a)(1)(B). As to Principal, the complaint alleged that it violated 29 U.S.C. § 1105(a)(2) and (3) by failing to investigate and take action to recover the missing plan funds.[4]

The district court granted summary judgment in favor of defendants Mutual Benefit and Gorny. Under the terms of its contract with the plan and the plan itself, Mutual Benefit was required to turn over all plan funds upon written demand by a trustee. As fiduciaries, Mutual Benefit and Gorny were required to act in compliance with the contract and the plan terms. Thus, the district court found that transfer of funds pursuant to Zucker's instructions did not constitute a breach of fiduciary duty.[5]

The district court also granted summary judgment in favor of defendant Principal. The court explained that the sole jurisdictional basis for a suit seeking money damages was 29 U.S.C. § 1132(a)(2), which allows suits for violations of 29 U.S.C. § 1109(a). Under § 1109(a), Principal would be liable for any breach of its fiduciary duty under 29 U.S.C. § 1105(a) only for losses to the plan "resulting from" such breach. 29 U.S.C. § 1109(a). The court concluded that Silverman had failed to offer any evidence that the plan's loss resulted from Principal's breach.

## Discussion

### A. Mutual Benefit and Gorny

◼ Mutual Benefit's transfer of plan funds to Zucker, in the form of a check made out to the plan, complied fully with the terms of Mutual Benefit's contract with the plan. The contract provided that Zucker, as trustee of the plan, "may discontinue this contract at any time by notifying us in writing." No other conditions are placed upon cancellation. Zucker sent Mutual Benefit a letter signed in

---

4. Although Silverman's complaint refers solely to 29 U.S.C. §§ 1105(a)(2)-(3), he argued to the district court that Principal's actions also violated 29 U.S.C. § 1105(a)(1).

5. The district court also rejected Silverman's contention that the SPD inadequately described or misrepresented the possibility of transfer of plan funds from Mutual Benefit to Zucker.

his capacity as plan trustee "discontinuing the 401(k) Contract." Upon written notice of discontinuance, Mutual Benefit was required to return to the plan all "Investment Accounts held under this contract."

The transfer of plan funds also complied fully with the terms of the plan itself. Silverman argues that Mutual Benefit and Gorny violated their fiduciary duties of care and prudence by transferring the plan funds because Zucker's letter requesting cancellation of the contract was signed by only one of the two plan trustees. Under ERISA, a trust agreement providing for more than one fiduciary must provide for joint authority to control and manage the plan, *see* 29 U.S.C. § 1102(a), and the exercise of joint powers typically requires the action of all trustees. *See Illinois Conf. of Teamsters and Employers Welfare Fund v. Mrowicki,* 44 F.3d 451, 462–63 (7th Cir.1994). However, joint trustees may modify the default rule by agreeing to delegate authority to a single agent. *See id.* at 463; *see also* Restatement (Second) of Trusts § 194 (1959) (joint trustees must act unanimously "unless it is otherwise provided by the terms of the trust"). Under the terms of the plan, the joint trustees "may authorize one or more of them to sign all papers on their behalf." The plan further provided that Mutual Benefit "may rely on the signature of any Trustee on an application for or any document used in connection with" its contract with the plan. The plan delegated to Zucker the authority to act on behalf of both trustees in documents used in connection with the plan, and Mutual Benefit lawfully relied on this authority in connection with cancellation of the contract.

Nor did the disbursement of plan funds conflict with the terms of the SPD. The SPD explained that the plan trustees retained "the right to amend or discontinue the Plan." It did not elaborate on the procedures to be followed by the trustees in taking such action, and was not required to do so. *See* 29

U.S.C. § 1022(b). Nothing in the SPD prohibited a trustee's cancellation of Mutual Benefit's contract with the plan.

Under these circumstances, Mutual Benefit had no duty of inquiry pursuant to § 1104(a)(1)(B) prior to releasing plan funds to Zucker. It had no reason to be suspicious of Zucker's cancellation of the contract. *Cf. FirsTier Bank N.A. v. Zeller,* 16 F.3d 907, 911 (8th Cir.) (bank could be liable for complying with trustee's order "if the [bank] knows or ought to know that the [trustee] is violating his duty to the beneficiaries as fiduciary in giving the directions") (quoting IIA Scott on Trusts § 185, at 574 (4th ed.1987)), *cert. denied,* 513 U.S. 871, 115 S.Ct. 194, 130 L.Ed.2d 126 (1994). Mutual Benefit's financial problems in the Spring and Summer of 1991 provided ample reason for the cancellation. Zucker's cancellation request complied fully with the terms of all relevant plan documents and the contract itself. *Cf. Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982) (refusing to impose a fiduciary duty to inquire about the prudence of trustee's withdrawal of plan funds where bank had contractual duty to honor trustee's withdrawal slips). Summary judgment was properly granted in favor of Mutual Benefit and Gorny.[6]

We do not discuss the contentions that Silverman raises for the first time on appeal, as these arguments are waived for failure to raise them below. *See Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 266 (2d Cir.1997).

## B. Principal

Silverman claims that Principal's failure to investigate and take steps to recover the $130,000 in missing plan assets constituted a breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

Under 29 U.S.C. § 1105(a), a plan fiduciary[7]

---

6. In view of this disposition, we need not consider Mutual Benefit's contention that it was not acting as a fiduciary in transferring the plan funds to the trustees because it lacked discretionary authority in connection with that action. *See Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 21 (2d Cir.1996).

7. Principal meets the definition of a "fiduciary with respect to a plan" under 29 U.S.C. § 1002(21)(A)(i), (iii) (stating that a person who "exercises any authority or control respecting management or disposition of its assets" or who "has any discretionary authority or discretionary

shall be liable for a breach of fiduciary responsibility of another fiduciary . . .

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Silverman argues that liability should be imposed on Principal based on Principal's failure to investigate Zucker and Fertig's embezzlement and to take reasonable steps to recover missing plan funds. *See Lee v. Burkhart*, 991 F.2d 1004, 1010–11 (2d Cir. 1993).

█ Like the district court, we read the relevant statutes to require Silverman to show that the loss claimed resulted from Principal's breach. Jurisdiction for this suit for compensatory damages arises under § 1132(a)(2), which permits a fiduciary to bring a civil action "for appropriate relief under section 1109 of this title." [8] Section 1109, in turn, provides

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan *resulting from* each such breach. . . . .

29 U.S.C. § 1109(a) (emphasis added). This statute therefore requires a plaintiff to demonstrate in a suit for compensatory damages that the plan's losses "result[ed] from" Principal's breach of § 1105(a)(3). *See Willett v. Blue Cross and Blue Shield*, 953 F.2d 1335, 1343 (11th Cir.1992) (defendant who breaches § 1105(a) is liable under § 1109(a) for the resulting loss); *see also Free v. Briody*, 732 F.2d 1331, 1336 (7th Cir.1984); *Justice v. Bankers Trust Co. Inc.*, 607 F.Supp. 527, 535–36 (N.D.Ala.1985). Specifically, Silverman must show some causal link between the alleged breach of Principal's duties and the loss plaintiff seeks to recover. *See Felber v. Estate of Regan*, 117 F.3d 1084, 1087 (8th

Cir.1997); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 445 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 56, 136 L.Ed.2d 19 (1996); *Friend v. Sanwa Bank California*, 35 F.3d 466, 469 (9th Cir.1994); *Ironworkers Local # 272 v. Bowen*, 695 F.2d 531, 536 (11th Cir.1983); *Brandt*, 687 F.2d at 898; *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir.1992) (defendant fiduciary may not be held liable for breaching fiduciary duty to pay contributions to ERISA fund "unless, absent a fraudulent breach, the funds could have collected them"). This principle is consistent with the common law of trusts, which imposes a duty on a successor trustee to remedy the breach of a prior trustee, and imposes liability for breach of this duty "to the extent to which a loss results from [the successor trustee's] failure to take such [remedial] steps." *See* Restatement (Second) of Trusts § 223(2) and cmts. c. and d. (1959).

█ Thus, in order to satisfy the necessary elements imposed by §§ 1105(a)(3) and 1109(a), Silverman must show that (i) Principal had knowledge of the trustees' embezzlement, (ii) Principal failed to make reasonable efforts to remedy the trustees' breach, and (iii) the fund's loss resulted from that failure.

A material question of fact exists as to whether Principal had knowledge of a breach of fiduciary duty by the trustees. Principal knew that Zucker and Fertig had not forwarded all the plan assets remitted by Mutual Benefit; it knew also that Unitron had failed to make the required salary deferral contributions. Principal sent letters on November 5 and November 14 raising the issue of the trustees' failure to forward all of the plan funds. It received no answer to either letter. Principal's internal memoranda show that by November 13 it recognized that it had a legal problem and had involved its legal department. Although Principal did not know all the facts concerning embezzle-

---

responsibility in the administration of such plan" is "a fiduciary with respect to a plan").

8. Silverman does not contend that he has authority to sue Principal for recovery of compensatory money damages under § 1132(a)(3), although that provision might authorize the recovery of equitable monetary relief for a violation of

§ 1105(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489, 510–14, 116 S.Ct. 1065, 1077–78, 134 L.Ed.2d 130 (1996). Compensatory damages are not "equitable relief" under the meaning of § 1132(a)(3). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255–59, 113 S.Ct. 2063, 2068–70, 124 L.Ed.2d 161 (1993).

ment, a reasonable factfinder could conclude that, at some point prior to its report to the Department of Labor, Principal had knowledge of the trustees' breach. *See Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir.1993).

Silverman has also adduced sufficient evidence to present a jury question whether Principal breached its duty under § 1105(a)(3) to "make[ ] reasonable efforts under the circumstances to remedy the breach." In the face of indications of impropriety concerning the fund's monies, Principal did nothing. Indeed, its inaction continued even after it had been told in late January or early February 1992 of the embezzlement of salary deferral contributions. The deficiency of funds, coupled with the trustees' failure to respond to Principal's inquiries, could reasonably sustain a finding that Principal had a duty to take further action to explore the reason for the deficiency and take steps to recover the missing funds.

The district court found that Principal was entitled to summary judgment because of the plaintiff's failure to satisfy the additional requirement of § 1109(a) by showing that the fund's loss resulted from Principal's inaction. Judge Ross reasoned that Silverman had failed to make any showing that, at the time Principal's duty of pursuit arose, Zucker or Fertig had any assets that might have been recovered. As further explained in Judge Jacobs's separate opinion, a majority of our panel agrees, by reason of the absence of evidence that Zucker or Fertig had funds in November or thereafter.[9] Accordingly we affirm the grant of summary judgment in favor of Principal.

We have considered Silverman's other claims of error and find them to be without merit.

## Conclusion

The judgment of the district court is affirmed.

JACOBS, Circuit Judge, with whom Judge Meskill concurs, concurring:

■ The opinion of the Court reflects the conclusion that Silverman failed to make the requisite showing under § 1109(a) that the fund's losses *resulted* from Principal's inaction. Judge Leval (as author) records his disagreement with that view and the opinion of the Court does not address it. Having signed the opinion of the Court, I write additionally to explain why Silverman has failed to adduce evidence sufficient to raise a genuine issue of material fact with respect to causation.

[7, 8] An ERISA plaintiff who seeks compensatory damages under § 1105(a)(3) must show, *inter alia,* that the losses "result[ed] from" the defendant's failure to take reasonable steps to remedy the co-fiduciary's breach. *See* 29 U.S.C. §§ 1109(a), 1105(a)(3) (1985); *Diduck v. Kaszycki & Sons Contractors,* 974 F.2d 270, 279 (2d Cir.1992). Causation of damages is therefore an element of the claim, and the plaintiff bears the burden of proving it. The specific factual question is whether Zucker or Fertig, during the time period in which Principal is alleged to have violated its duty to act, possessed assets from which any portion of the embezzled funds could be recovered. The date of Principal's alleged breach of its duty to act (if any) is a question for the fact-finder; but if there was a breach, it took place on some date between mid-November 1991 and March 1992. Unless Zucker and Fertig had resources that could be found and seized to replenish the plan *at such time as Principal breached a duty to act,* the loss cannot have been caused by Principal's inaction.

Silverman has expressly declined to proffer evidence as to what Fertig and Zucker did with the funds they embezzled, or as to whether at any pertinent time they had assets that could have made good the loss. Silverman and the Department of Labor (appearing as *amicus curiae* ) evidently recognize that there is no record evidence to demonstrate a causative link between Principal's inaction and the plan's losses. That is why they have argued (both in district court and

**9.** The author of the opinion respectfully dissents from this ruling, believing that the evidence outlined above was sufficient to give rise to a material issue of fact to present to a jury.

on appeal) for a shift of the burden of proof on the issue of causation, so that once a plaintiff has shown a breach of section 1105(a)(3) and a related loss, the defendant must "prove that the loss was *not* caused by its breach of fiduciary duty." Brief of the Secretary of Labor as *Amicus Curiae* at 7 (emphasis added).

This argument is derived from the common law of trusts, under which a defaulting fiduciary bears the burden of disproving causation. *See In re Beck Industries, Inc.,* 605 F.2d 624, 636–37 (2d Cir.1979).[1] But the Supreme Court has cautioned that "the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996). Congress has placed the burden of proving causation on the *plaintiff* by requiring him to prove that the losses "result[ed] from" the defendant's inaction. *See* 29 U.S.C. §§ 1109(a), 1105(a)(3). And we have held that it is the plaintiff's burden to "prov[e] an amount of damages caused by the fraud." *Diduck,* 974 F.2d at 279. Section 1105(a)(3) provides for extraordinarily broad liability for co-fiduciaries because it requires only that the defendant be a fiduciary of the same *plan* as the breaching fiduciary, not that they be fiduciaries with respect to the same *assets.* So a co-fiduciary, like Principal in this case, may be held liable for another trustee's breach with respect to assets over which the defendant co-fiduciary never exercised dominion or control. *See* 29 U.S.C. § 1105(a)(3).[2] The causation requirement of § 1109(a) acts as a check on this broadly

sweeping liability, to ensure that solvent companies remain willing to undertake fiduciary responsibilities with respect to ERISA plans.

Silverman did not raise a fact issue as to whether Zucker and Fertig had assets at the time of the breach by showing that Zucker and Fertig had received $130,000 in late September or early October. Initially at least, an embezzler will almost always have the stolen funds in his hands. But the embezzler's initial possession of the stolen funds cannot support an inference that an embezzler maintains the funds continuously thereafter in a place accessible to creditors (subject to the defendant's showing that the funds were dissipated or hidden). Otherwise, a plaintiff who demonstrates a breach of the embezzler's fiduciary duty—a threshold requirement under section 1105(a)(3)—would often be relieved of the burden of proving causation in any meaningful sense: evidence that the embezzler once possessed the money would constitute a prima facie showing that the money could have been recovered when the co-fiduciary later failed to alert the authorities.

Why cannot a jury infer that funds in hand in September were still available in November, or the following year? The problem is that (i) the stolen funds were in the embezzlers' hands in September; but (ii) the money was gone by the following April; and (iii) the record does not show what happened to the money in the interval. A fact-finder could fix Principal's culpable failure to act on any date after mid-November 1991; but Silverman has come forward with no evidence bearing on when the money vanished. So in order to

---

1. The Department of Labor also relies on *Martin v. Feilen,* 965 F.2d 660, 671 (8th Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993), which holds that "once the ERISA plaintiff has proved a breach of fiduciary duty and a prima facie case of loss to the plan or ill-gotten profit to the fiduciary, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by, or his profit was not attributable to, the breach of duty." Even if the Eighth Circuit's analysis is correct, the issue in *Martin* involved the *calculation of damages* after the plaintiff proved a prima facie case that the plan suffered a loss resulting from the defendant's breach of its fiduciary duty. *See id.* (holding that Secretary of Labor had established a

prima facie case by proving that defendants "violated § 1104 by causing the ESOP to engage in stock transactions that caused specific injury to the ESOP *at the time in question*."). The issue before this Court involves the burden of proving causation, not damages.

2. Section 1105(a)(3) provides that "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3) (1985).

decide whether—and how much—money was available for recovery at an intervening point in time, the factfinder would have no tool but speculation.

*Diduck* illustrates the kind of evidentiary showing required. The judgment-proof employer in *Diduck* had made no pension contributions for people working off the books, and the co-fiduciary was the shop steward whose reports to the fund trustees had failed to reflect the off-the-books employment. *Diduck*, 974 F.2d at 274. Notwithstanding the employer's chronic shortage of funds, the defendant trustees had repeatedly and successfully enforced their demands for fund contributions on behalf of reported workers by threatening work stoppages. *Id.* at 279. In light of the trustees' ability to force payments in respect of on-the-books workers, we concluded that the trial court's ruling that damages were sustained was "at most" a finding of

> what might be called a *prima facie* case of damages caused by the fraud. At that point, the defendants should have been afforded an opportunity to rebut this showing. This chance was not afforded them. After such rebuttal, the trier would have to decide whether the plaintiff had sustained his burden of proving an amount of damages caused by the fraud.

*Id.* Thus in *Diduck*, causation was established because the plaintiff showed that—at the time of the co-fiduciary's breach—a tool was at hand to force timely payment of amounts due; and even then, a question remained open as to whether the plaintiff had proved or could prove an *amount* of damages recoverable. Here, Silverman has declined to offer any evidence to support the fact or amount of damages, other than the underlying theft.

Silverman would have us adopt implicitly an unsupported presumption that embezzled funds are retained in an accessible place for some predictable and substantial period of time. However, "[i]t is generally understood that in law for a specified fact to be presumptive evidence of another it must be one which in common experience leads naturally and logically to that other." *Wilkins v. American Export Isbrandtsen Lines, Inc.*, 446 F.2d

480, 484 (2d Cir.1971), *cert. denied*, 404 U.S. 1018, 92 S.Ct. 679, 680, 30 L.Ed.2d 665 (1972). There is no body of common experience to establish that embezzlers as a class are so thrifty and provident that one may presume their prudent stewardship of the money they steal. The fact that Zucker and Fertig stole money in September does not support an inference that they had funds available for recovery one, two, three or four months later.

**TAMARIND RESORT ASSOCIATES, a U.S. Virgin Islands Joint Venture consisting of Tamarind Resort Corporation, a Delaware Corporation, Culligan Porsche, Inc., a New York Corporation,**